David I. SIMS, Appellant,

v.

UNITED STATES of America,
Appellee.

Ronald D. SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

David REED, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 21300–21302.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 14, 1968.

Decided Nov. 15, 1968.

Mr. William O. Bittman, Washington, D. C., with whom Mr. Stuart Philip Ross, Washington, D. C. (both appointed by this court), was on the brief, for appellant in No. 21,300.

Mr. Daniel M. Singer, Washington, D. C. (appointed by this court), for appellant in No. 21,301.

Mr. James R. Stoner, Washington, D. C. (appointed by this court), for appellant in No. 21,302.

Mr. Daniel J. Givelber, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. William J. Davis, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

PER CURIAM:

■ The three appellants were jointly tried and convicted of felony murder, each receiving a life sentence. The charge grew out of the fatal shooting of a cab driver during an attempted robbery. The evidence against appellants included statements, incriminating as to all, made by one or more of them to other witnesses who related the statements at trial. Appellants moved unsuccessfully for severance under Rule 14, FED.R.CRIM. P., both before and during the trial.[1] On appeal they claim that severance should have been granted, and in fact is required by the recent decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because the trial judge admitted the incriminating statements with cautionary instructions to the jury to consider them only as to the particular declarant and to disregard them, as hearsay, against the other appellants. We agree that under the circumstances of this case the trial judge should have exercised her discretion under Rule 14 to grant severance.

■ On no less than 15 occasions during the trial the judge instructed the jury to disregard an incriminating statement, except as to the appellant who actually made it.[2] Bruton v. United States clearly shows the hollowness of

---

1. The trial judge, under Rule 14, has "a continuing duty at all stages of the trial to grant a severance if prejudice does appear." Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed. 2d 921 (1960); United States v. Vida, 6 Cir., 370 F.2d 759, 765 (1966), cert. denied, 387 U.S. 910, 87 S.Ct. 1695, 18 L.Ed.2d 630 (1967).

2. In Lutwak v. United States, 344 U.S. 604, 618, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953), the Supreme Court noted:
 " * * * The court must be careful at the time of the admission *and by its instructions* to make it clear that

the evidence is limited as against the declarant only. * * * " (Emphasis added.)
*See also* United States v. Gardner, 7 Cir., 347 F.2d 405, 406 (1965), cert. denied, 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529 (1966).
Here the instructions were given when each statement was admitted but were not included in the court's charge to the jury. It would have been difficult indeed for even the trial court to recall to the jury in its charge in this case the 15 occasions on which the statements were admitted and which statements were admissible against which defendants.

such cautionary instructions and illuminates the charade of pretending that the jury can put out of its mind damaging evidence it has just heard:

"The basic premise of *Delli Paoli* [v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), upholding cautionary instructions] was that it is 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him in committing the crime. * * * But since *Delli Paoli* was decided this Court has effectively repudiated its basic premise. * * *" [3] 391 U.S. at 126, 88 S.Ct. at 1622.

This case was tried before *Bruton* was decided, and we have little doubt that, had the trial postdated *Bruton*, the trial judge would have granted severance rather than instruct the jury to perform the realistically impossible feat of disregarding each of the 15 statements as to one or more of the appellants.

Rule 14 was amended in 1966 to take into account just such prejudice as arose here. The Comment to the amended Rule states:

"A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. * * * Limiting instructions to the jury may not in fact erase the prejudice. * * *"

This case is a classic example of when prejudice cannot be erased and severance is called for. *See* United States v. Bozza, 2 Cir., 365 F.2d 206 (1966); Kramer v. United States, 115 U.S.App.D.C. 50, 317 F.2d 114 (1963); Barton v. United States, 5 Cir., 263 F.2d 894 (1959). Judge Friendly's statement in *Bozza,* 365 F.2d at 217, is equally applicable here: "* * * [T]here is a point where credulity as to the efficacy of such instructions with respect to a confession implicating co-defendants is overstrained * * *."

■ The Government argues that the statements do not come within *Bruton* because they were admissible under various exceptions to the hearsay rule, and that severance is not required because the statements could all have been used in separate trials. However, the Government did not raise this argument in the trial court, and did not contest the trial judge's ruling that the statements were inadmissible hearsay against non-declarants. Given the state of the record, we do not consider this argument on appeal.[4]

■ Appellants also claim they were denied their right to a speedy trial by

---

3. *And see* Judge Learned Hand's famous statement in Nash v. United States, 2 Cir., 54 F.2d 1006, 1007, cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932), that a cautionary instruction is a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else."

4. A post-argument memorandum filed by the Government suggests a remand to determine whether the 15 statements are admissible on a basis other than that on which they were offered and received in evidence, namely, whether they are admissible as to all appellants under exceptions to the hearsay rule. We doubt that the defects in this trial can be papered over · by any post-trial plastic surgery. Although *Bruton* was decided after trial, *Kramer, Barton* and *Bozza* had been on the books for some time,

and the amendment to Rule 14 for one year. It is hardly conceivable that in a capital trial where severance had been moved for and where the Government knew it intended to offer these 15 statements the Government did not consider the hearsay exception point before the appellate stage of the proceedings. Yet, when the prosecutor offered the declarations at trial he agreed with the trial judge's explicit statement that they would be considered as being offered only against the declarant. Moreover, these appellants have been in jail 33 months awaiting resolution of their fate. As indicated in text below, the issue of denial of speedy trial already looms large in this case. A remand, with its possibility of subsequent appeal, can only increase the intensity of the speedy trial issue if these appellants are eventually successful in winning a new trial.

the 16-month delay between arrest and trial. While we do not find sufficient prejudicial delay to grant this relief, we note that the delay illustrates another reason why severance should have been granted. One appellant was ready for trial some eight months before the trial was held, but had to await the determination of various pre-trial issues raised by the other appellants. Separate trials would have alleviated this problem.

 Accordingly, we reverse for severance and new trials.[5]

So ordered.

---

5. On retrial four issues, three of which were raised by appellants on this appeal, may arise and therefore bear comment. First, since appellants were also charged with first degree premeditated murder, the trial judge should charge the jury with respect to manslaughter as a lesser included offense if there is any evidence, however weak, tending to show manslaughter. Belton v. United States, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967). Second, jurors should be excused for cause if they are, or are related to, taxicab drivers. *See* Jackson v. United States, 129 U.S.App.D.C. 392, 395 F.2d 615 (1968); United States ex rel. DeVita v. McCorkle, 3 Cir., 248 F.2d 1, *cert. denied*, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1967).

Third, in charging the jury as to malice the trial judge stated: "In determining whether a wrongful act is intentionally done and is, therefore, done with malice aforethought * * *." As this court held in Green v. United States, 132 U.S. App.D.C. ——, 405 F.2d 1368 (decided November 1, 1968):

"A wrongful act intentionally done is not therefore done with malice. Omitted from this definition of malice is the element of wilfulness, * * * or that the intentionally done wrongful act was without justification or excuse. * * *"

(p. ——, 405 F.2d p. 1370.) (Footnote omitted.)

The law is correctly stated in Charge 83, BAR ASSOCIATION OF THE DISTRICT OF COLUMBIA, CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, p. 62:

"* * * 'Malice' may also be defined as the condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse."

Finally, under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), if jurors are questioned as to their general "opposition" to capital punishment, and excused on that ground, that jury cannot return a death penalty verdict. Since asking such questions is error, they should not be asked. A related point is that if the Government is allowed to ask the question permitted in *Witherspoon*—whether a juror under no circumstances would consider bringing in a death penalty verdict—then the defendant should be allowed to ask the reverse question—whether under all circumstances a juror feels compelled to return a death penalty verdict when he finds a defendant guilty of first degree murder.