UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe E. SIMMONS, Defendant-Appellant.

No. 73–2664.

United States Court of Appeals,
Fifth Circuit.

Nov. 7, 1974.

Rehearing Denied Dec. 6, 1974.

Allen I. Hirsch, Atlanta, Ga., for defendant-appellant.

William J. Schloth, U. S. Atty., E. Ray Taylor, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, Joe E. Simmons, was convicted on two counts of furnishing false statements to a federal land bank in violation of Title 18, U.S.C., Section 1014.[1] He appeals on the following four grounds: (1) certain damaging testimony as to a prior occurrence should not have been admitted into evidence at trial; (2) a jury instruction regarding "accomplice" testimony should not have been given; (3) the insufficiency of the evidence to support a conviction under Count Two of the indictment; and (4) prejudice before the jury resulting from the attitude and demeanor of the trial judge, viewing the record as a whole. We fail to find that reversible error occurred at the trial, and affirm.

In October of 1971, Simmons applied to the Federal Land Bank Association of Madison, Georgia for a loan in the amount of $135,000. The bank requested a financial statement and some verification of claimed income. Simmons responded by furnishing a financial statement and his 1969 income tax return,[2] both of which from their face indicated they were prepared by his accountant, Herbert E. Woll. These two statements were the underlying documents for the two counts of the indictment upon which Simmons was charged and convicted.

The financial statement in question was in three parts—(1) the preamble, which included Woll's signed statement of professional verification,[3] (2) the statement of net worth, which purported

---

1. Sec. 1014 states, in pertinent part:
   "Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of (an extensive list of institutions here follows, among which is a Federal land bank) . . . upon any application . . . or loan . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

2. Mr. Gus Johnson, president of the bank, had asked Simmons for his most recent tax return, which should have been 1970. Simmons explained that the Internal Revenue Service had given him an extension of time for filing his 1970 return due to an automobile accident in which he was injured and his 1970 return had, therefore, not yet been prepared. Simmons's 1969 return was accepted by Johnson, together with his approved application for the 1970 extension.

3. The following preamble constituted the cover letter attached to the financial statement:
   "In accordance with the terms of my engagement, I have examined the records and supporting data of Joe and Joellen Simmons. After such tests as were deemed necessary, the accompanying financial statement as of July 31, 1971 was prepared.
   Stock certificates were examined and current market values were verified with quotes from a reputable brokerage firm.
   The controlled corporations have large land holdings in Newton County, Georgia. The values for this acreage was deter-

to include total assets and liabilities, (3) the itemized breakdown of two assets included in the statement of net worth, entitled "Investments in Controlled Companies" and "Investments in Real Estate." The specific portions of the financial statement challenged as false were the evaluations of the two assets in part 3.

The income tax return was challenged on two separate grounds, first that the represented gross income and tax credits were knowingly false, and second that the return itself was a knowingly false representation in that it had never been filed and hence was not what it purported to be, a copy of a valid income tax return.

■ Simmons's first contention on appeal concerns testimony elicited from the last of the 24 government witnesses called at trial, Fred Judd. Judd testified, over timely objection, that in 1969 he was the vice president of a corporation in which Simmons was the largest stockholder. The corporation sought a loan from a bank which, in turn, requested the corporate principals, including both the witness and Simmons, to furnish a financial statement. Although Simmons refused to comply personally with the bank's request, Judd's testimony was that he, Simmons, undertook to teach Judd how to mislead the bank by means of a false financial statement.[4] Simmons's position is that this testimony was erroneously admitted into evidence because it did not meet the requirements established in United States v. Broadway, 5 Cir. 1973, 477 F.2d 991, for the admission of proof of a separate offense to show guilty knowledge or intent. We think this position is unsound because Judd did not testify as to a prior criminal offense, but rather simply as to a similar earlier occurrence.

■ Evidence of acts similar to those charged is often tendered to establish a required mental ingredient of the offense charged. The test of admission is the traditional balancing of probative value against prejudicial effect. See, United States v. Scanland, 5 Cir. 1974, 495 F.2d 1104. When the acts sought to

mined with the help of various real estate agents who were familiar with land values in the area.

Several of the corporations have borrowed funds from the C & S Bank and the Peoples American Bank. Joe Simmons has a contingent liability on these loans of $275,000.00. The real estate corporations and controlled corporations have mortgages in the amount of $271,887.43 on which Joe Simmons is a co-maker. These are against the real estate.

Subject to the above comments, the accompanying financial statement fairly presents the financial condition of Joe and Joellen Simmons as of July 31, 1971, in accordance with generally accepted accounting principles."

/s/ Herbert E. Woll.

4. Judd testified as to this incident, occurring two years before the transaction under indictment:

A. Mr. Simmons indicated that the way to fill out a financial statement would be to show a large number of shares with a believable value per share of perhaps three to five dollars, but to show a large number of shares so that the total value shown would be supremely large and even if the banker discounted the total value substantially from five million to one million, he would still be in the banker's mind showing a million dollars.

Q. Was there any discussion as to whether or not you owned the stock you were trying to evaluate and what Mr. Simmons advised you in regard to that?

A. Well, Mr. Simmons told me at the time that I owned some stock that I didn't know about in a company called Federal Franchise Corporation.

Q. Did you ask him whether or not you should put that down on the financial statement?

A. Yes, and he said definitely put it down.

Q. Even though you didn't own it?

A. He said, "you will own it, and you do own it." I said, "Well, I don't have it," and he said, "Well, put it down."

* * * * *

Q. Did he indicate what impression he may have had of bankers in general?

A. He just felt like they would always lend some credence to what was put down on the statement even though it might be very small. No matter how conservative or dumb or whatever they might be, that they would still believe something that was on the paper, that nobody would ever suspect going from zero to ten million. They might believe going from a million to ten million.

be admitted constitute a prior criminal offense the inherent danger of prejudicing the jury against the defendant is so great that unless the evidence of the other similar crime is reasonably necessary to the government's case, United States v. Goodwin, 5 Cir. 1974, 492 F.2d 1141, and is plain, clear and conclusive, United States v. Broadway, supra, its probative value will not be held to outweigh its possibility or prejudice. United States v. Miller, 5 Cir. 1974, 500 F.2d 751. Thus we have held evidence of a prior offense admissible to show intent or guilty knowledge only if the prior offense included the essential physical elements of the offense charged, and these physical elements, but not necessarily the mental element of the offense, are clearly shown by competent evidence. United States v. Shadletsky, 5 Cir. 1974, 491 F.2d 677; United States v. Fonseca, 5 Cir. 1974, 490 F.2d 464. But this is not to say that proof only of acts which amount to a criminal offense are admissible. We have never held that a defendant's intent or guilty knowledge can be proved only by evidence of prior acts rising to the level of a criminal offense. See, United States v. Scanland, supra.

■ In order to meet its burden of proof in any prosecution pursuant to Title 18, U.S.C., Sec. 1014, the government must show (1) that a statement has been supplied by the defendant to a specified lending institution which is capable of influencing the institution's decision to loan funds, and (2) that the statement is knowingly false. United States v. Kay, 1968, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607; United States v. Goberman, 3 Cir. 1973, 458 F.2d 226. Simmons's intent or guilty knowledge was, therefore, a primary ingredient of the government's case. Moreover, since Simmons did not deny that he supplied the statements to the bank, but defended instead on the grounds that they were not knowingly false, his intent or guilty knowledge became *the* primary contested

ingredient of the offense in the case. Since Judd's testimony was plain, clear and conclusive that Simmons possessed the requisite knowledge to falsify a financial statement to be presented to a bank in conjunction with a loan, we deem Judd's testimony to be admissible as probative of Simmons's guilty knowledge or intent. We conclude also that the probative value of the evidence was not clearly outweighed by its prejudicial effect on the jury.

■ The trial judge's inaccurate reference to this evidence as a prior offense was unfortunate but not controlling. We conclude because of the strong nature of the government's proof that any error created by improper judicial characterization was harmless beyond a reasonable doubt. Simmons is entitled only to a fair trial, not necessarily a perfect one. Lutwak v. United States, 1953, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593; Samuels v. United States, 5 Cir. 1968, 398 F.2d 964. We decline, in the peculiar factual context present, to exalt form over substance by concluding that prejudicial error occurred in this regard.

Simmons's second contention concerns the trial court's giving the jury an accomplice instruction respecting the testimony of Woll. Each of the statements set forth in Count One and Count Two of the indictment on its face identified Woll, Simmons's accountant, as the preparer. Regarding Simmons's purported 1969 tax return, (Count Two) Woll denied having prepared or signed it, although what appeared to be his signature was located in the space provided on the form for "preparer other than taxpayer." Regarding the financial statement, (Count One) Woll testified in substance that he had prepared it with the help of Simmons. More specifically, Woll testified that almost the entire financial statement was based solely on Simmons's evaluations of his own assets.[5] When confronted with his

5. THE COURT: Was there any source other than Mr. Simmons for any of the information shown in this entire financial statement?

signed statement of professional verification, Woll explained it as an inadvertent signing of a "standard letter form that we use all the time." At one point during the direct examination, the district judge asked Woll whether at the time he prepared the financial statement he had been advised by Simmons that it would be used in conjunction with a loan application to a federal bank. · Woll answered:

"No, he didn't advise me such, but I probably figured he was going use it for credit purposes of some sort.

I would say generally speaking he brought them in for various reasons, but basically they use financial statements to show his net worth to various people for various things."

The court thereupon reminded Woll of the putative criminal status of an aider and abettor, and informed him of his constitutional right against self-incrimination.[6] At the conclusion of Woll's testimony, prior to the next witness being presented, the trial judge turned to the jury and said:

"Ladies and Gentlemen, the Court is not going to instruct you all until the end of the case and the fact that I may mention some things during the case is not intended to overemphasize it but to keep the trial in perspective. And one of the things the Court is going to tell you at the end of the case is that an accomplice is someone who unites in the commission of a crime. It would be possible for you ladies and gentlemen, if you find that a crime has been committed, to find that the witness that has just left the courtroom may be an accomplice. And it would be possible legally, if you find that· he is an accomplice, then for you to be confronted with the question of what weight, if any, to give the testimony of an accomplice.

I just simply point that out. The Court will instruct you as to that at the end of the case."

---

WOLL: No, not as far as the original information.
THE COURT: Well, how about the remainder of the information on the (financial statement)? Where did that information come from beginning with "Investment in Real Estate Schedule 2?"
WOLL: Joe Simmons.
THE COURT: Any source other than Mr. Simmons?
WOLL: No.
THE COURT: Was there any source other than Mr. Simmons for any of the information shown in this entire financial statement?
WOLL: No, not as far as the original information.
THE COURT: What do you mean "not as far as the original—"
WOLL: The original information as to ownership of land, how many acres.
THE COURT: What information is there to your knowledge that came from anybody other than Mr. Simmons that's in that financial statement?
WOLL: The valuation of the land in Newton County.
THE COURT: Who put the figure on it?
WOLL: I put the figure on the valuation of it per acre.

6. THE COURT: Then I would further assume that you were aware that under the laws of the state pertaining to aiding and abetting others that if it were to appear that you had any responsibility for anything that is materially false in this document that you too could be criminally responsible?
WOLL: I understand, but to the best of my knowledge we were very careful not to make any.
THE COURT: I understand. I am not suggesting one way or the other.
WOLL: I understand.
THE COURT: I think it is a Judge's duty to apprise every witness of where he stands in a case and I am simply pointing that out to you and advising you that if you feel that there is any possibility of your implication that under the Constitution. you, yourself do not have to incriminate yourself by your own testimony.
WOLL: I understand.
The district judge reminded Woll a second time of his right against self-incrimination in connection with Woll's testimony as to his statement of professional verification. When the witness was asked whether he had in fact verified any stock certificates with brokerage firms as his statement said, Woll admitted that he had not.

In his charge to the jury at the end of all evidence, the trial judge included the customary charge as to the weight to be accorded testimony of an accomplice, directing that it be received and weighed with caution, and referred to Woll by name.

■ There is no substance to Simmons's claim that the giving of these instructions was harmful to him and constituted reversible error because Woll was not a "principal, accessory or associate in guilt." If a witness is subject to indictment as a principal or accessory to the offense for which the defendant is charged, he is an accomplice. United States v. Nolte, 5 Cir. 1971, 440 F.2d 1124, 1126; Phelps v. United States, 5 Cir. 1958, 252 F.2d 49, 52. An individual who aids or abets another in the commission of a crime against the United States is punishable as a principal. Title 18, U.S.C., Sec. 2(a). The evidence sufficiently shows that Woll could have been indicted for aiding or abetting Simmons in the latter's deception.[7]

■ We also find groundless Simmons's contention that the charge was unnecessary. Whether an accomplice testifies for the prosecution or for the defense, "it is within the trial judge's discretion to instruct the jury to accept an accomplice's testimony with caution." United States v. Nolte, supra, 440 F.2d at 1126–1127. Woll's testimony if credited by the jury was highly damaging to Simmons. It is difficult to discern error harmful to Simmons in directing the jury to weigh it with caution.

■ Simmons's next ground of appeal questions the sufficiency of the evidence to support the conviction under the second count of the indictment.[8] Simmons asserts that there was no proof whatsoever at trial as to any false statement in the tax return. We disagree. For instance, the return showed a prepaid tax of $20,000 and a net income of approximately $311,000. The testimony of Simmons himself adequately demonstrated the falsity of these two figures.[9] The evidence also showed that the return was not as represented, a genuine return. It was never filed with the Internal Revenue Service. Viewing the evidence in the light most favorable to the government, as we must, Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680; Warner v. United States, 5 Cir. 1971, 441 F.2d 821; Peters v. United States, 5 Cir. 1967, 376 F.2d 839, we are left without serious doubt as to the sufficiency of the evidence to support the conviction under Count Two.

■ Lastly, the appellant urges that the hostile attitude and demeanor of the trial judge throughout the trial, including his remarks at appellant's sentencing, prejudiced his right to a fair trial. A thorough perusal of the record, including the instances cited on brief convinces us that this point is unsupported

---

7. It is interesting to note that after returning its guilty verdict, the jury made a formal request to the trial court that Woll be indicted for aiding Simmons in the deception.

8. Count Two of the indictment alleged that Simmons furnished to the federal land bank a false and fraudulent 1969 income tax return which return in fact had never been filed.

9. We quote from the cross-examination of Simmons:

Q. Now, did you look at this return, Mr. Simmons, before you handed it to Mr. Johnson?
A. I signed it, yes sir.

Q. You signed it? Now, you see down here on No. 22 where it says estimated 1969 tax payments?
A. Yes, I see it now.
Q. And you see that $20,000?
A. Yes sir.
Q. Did you pay $20,000 to the government in 1969?
A. I did not.
 *  *  *  *  *
Q. Is $311,000 an accurate reflection of your income in 1969?
A. No sir.
Q. It is not?
A. It is not.

by the record. Further discussion is not warranted.[10]

Despite discerning no merit in any point raised by Simmons on appeal, we find it necessary to remand for correction of an error occurring in the imposition of sentence. Simmons was directed to serve concurrent *three year* confinement sentences and to pay fines of $5,000 as to each count. Title 18 U. S.C. Sec. 1014 directs that the penalty for conviction be a fine of not more than $5,000, or imprisonment for not more than *two years*, or both. For the limited purpose of the sentence being corrected to conform to the statute, this cause is remanded to the district court.

Affirmed and remanded for correction of sentence.

---

10. As to the remarks at sentencing, Transcript pp. 401–409, consultation of the record indicates that these comments were based in part upon the pre-sentence report then before the judge and in part upon his recollection of the trial testimony. Coming when they did, they indicate no prejudice on the judge's part against the appellant. Even though the trial judge was in error as to the maximum lawful confinement sentence under Title 18, U.S.C. Sec. 1014, two years (see text, infra), his direction that the sentences under Counts One and Two be served concurrently, rather than consecutively, seems to us a contra-indication of prejudice against the accused.