UNITED STATES of America, Appellee,

v.

Garnett Johnnie JONES, Appellant.

No. 78–5165.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 10, 1979.

Decided Nov. 8, 1979.

James M. Smith, Baltimore, Md. (Gebhardt & Smith, Baltimore, Md., on brief), for appellant.

David Dart Queen, Asst. U.S. Atty., Baltimore, Md. (Russell T. Baker, U.S. Atty., and Kurt L. Schmoke, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and MURNAGHAN, Circuit Judges.

WINTER, Circuit Judge:

Convicted of bank robbery, Garnett Johnnie Jones appeals, assigning as reversible error the limited scope of the district court's voir dire of prospective jurors, its refusal to excuse two veniremen for cause, its instructions concerning the testimony of a witness who played a part in the crime and a witness who admitted to using drugs, and the absence of black males on the jury which rendered the verdict. We see no merit in any of these contentions, and we affirm.

### I.

At trial, the evidence showed that a bank was robbed by Norman Scott and Jerry Rowell and that Jones drove the getaway car. On the morning of the robbery, Scott, Rowell and Jones met at the home of Ms. Annie Jefferson, a former paramour of Jones. They remained there for about an hour talking and drinking coffee, but according to the testimony there was no mention to her of a proposed bank robbery or any other criminal activity. When the three left, Scott and Rowell got into Jones' car. Jones lagged behind and he told Jef-ferson that the three planned to rob a bank. He then also left, joined the others in his automobile and drove away.

In the time that they were gone, the bank was robbed.

The three returned within the hour and, without revealing what they had done, asked Ms. Jefferson for the use of her basement. There, Rowell testified, they divided the money and then only Rowell and Scott left the premises. Jones left a few minutes later, but Ms. Jefferson first complied with his request to look outside to see if there were any police. When Jones departed, he gave Jefferson $100 in cash.

In the jury selection process, the district court interrogated each venireman as to whether he, or any member of his family, had ever been an employee of a bank and also whether he, or a member of his family, had been a victim of an armed robbery. Notwithstanding defendant's request and subsequent objection, the district court declined to include the phrase "or any crime" in the latter question. In response to the questions, one venireman said that his wife was an employee of a savings and loan association (not the bank robbed in the instant case) but that she had never been robbed. A second venireman said that he had a daughter-in-law who was an employee of another bank. He knew that she had been the victim of a bank robbery but was not harmed, and he stated that he had never discussed the matter with her. The district court probed the connections with additional questions and both veniremen implied that there was nothing in the relationships which would make it difficult or impossible for them to render a fair and impartial verdict if selected to sit as a member of the jury in the instant case. The district court denied Jones' challenge for cause to both veniremen, and defendant was forced to expend two peremptory challenges to exclude them from the jury.

When the case was submitted to the jury, defendant requested that the jury be instructed that Ms. Jefferson could be considered an accomplice and that, accordingly,

her testimony should be scrutinized carefully and viewed with greater than ordinary caution. The district court declined to give this charge, although it gave general instructions as to credibility. The defendant also requested that the district court give the addict instruction with respect to the testimony of Jerry Rowell who pleaded guilty and testified as to defendant's participation in the robbery. *See United States v. Butler,* 156 U.S.App.D.C. 356, 481 F.2d 531 (D.C. Cir. 1973). The district court declined the request.

Although the petit jury which convicted defendant had three black females as members, its membership included no black males. Defendant, incidentally, sought unsuccessfully at one point to strike for cause a black male venireman, but he was not on the jury selected to serve.

## II.

We do not think that there was error (a) in the district court's declining to interrogate prospective jurors as to whether they or a relative had been the victim of "any crime," or (b) in declining to strike for cause the venireman whose wife was a bank employee or the one whose daughter-in-law had been the victim of a bank robbery.

**A.** It is well established that a trial court may exercise broad discretion in conducting the voir dire of the jury, and particularly in phrasing the questions to be asked. *See, e. g., Ristaino v. Ross,* 424 U.S. 589, 594–95, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976); *United States v. Johnson,* 527 F.2d 1104, 1107 (4 Cir. 1975). The fact that a juror or his relative has been the victim of some crime, unrelated to the offense being tried, is, we think, only minimally relevant to the question of that juror's impartiality. Indeed, if the mere fact that a juror or his relative had been the victim of some crime unrelated to that being tried constituted grounds for discharge, it would become difficult, if not impossible, to assemble a jury panel. In the instant case, defendant does not suggest that any particular juror was actually subject to an influence adversely affecting his impartiality. As a conse-

quence, it was not an abuse of discretion to refuse to ask the prospective jurors whether they or any of their relatives had been the victims of any crime.

In *United States v. Poole,* 450 F.2d 1082 (3 Cir. 1971), upon which defendant relies, the court overturned a conviction for armed bank robbery because the trial judge refused to inquire of the jurors: "Have you or any member of your family ever been the victim of a robbery or other crime?" However, the defendant in *Poole* was concerned specifically with the prejudice of a prospective juror who had once been a robbery victim. *Id.* at 1083. The absence of the first half of the question was fatal in *Poole,* and the cases it relied upon all involved prejudices arising from experiences with crimes similar to the ones at issue. Therefore, neither *Poole* nor the cases cited therein stand for the proposition that a trial court must ask whether the proposed jurors have had previous experience with any crime whatsoever.

**B.** In considering the district court's declining to strike the two jurors, we begin with the test articulated in *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961):

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.* (Emphasis added.)

The burden of proving partiality is upon the challenger. *Id.* Moreover, findings of impartiality should be set aside only where prejudice is "manifest." *Id.* at 724, 81 S.Ct. 1639.

There is some precedent suggesting that a juror who is related to a person holding a position similar to that held by the victim of the crime being charged must be excused for cause. *See United States v. Poole,* 450 F.2d 1082, 1084–85 (3 Cir. 1971) (bank tell-

er); *Sims v. United States*, 132 U.S.App. D.C. 111, 114 n. 5, 405 F.2d 1381, 1384 n. 5 (D.C. Cir. 1968) (taxicab driver). However, what little *Poole* and *Sims* had to say on the subject was pure dictum. And there exists more persuasive authority to the contrary. *United States v. Caldwell*, 178 U.S.App.D.C. 20, 34, 543 F.2d 1333, 1347 (D.C. Cir. 1975) acknowledged the statement in *Sims*, yet found no reason to bar a son and a father-in-law of police officers from serving as jurors in a case arising out of the killing of a policeman. *See also Mikus v. United States*, 433 F.2d 719, 723–24 (2 Cir. 1970) (bank chairman).

The situation is more compelling when a juror is closely associated with a victim of the same type of offense as that being tried. *See Virgin Islands v. Bodle*, 427 F.2d 532 (3 Cir. 1970) (rape); *Jackson v. United States*, 129 U.S.App.D.C. 392, 394–395, 395 F.2d 615, 617–18 (D.C. Cir. 1968) (murder of lover by lover's husband). As the court noted in *Mikus*, 433 F.2d at 723, *Jackson* involved a striking similarity between the bizarre personal experiences of the juror and the facts of the case at hand, and deliberate non-disclosure by the juror. *See also Caldwell, supra*, 178 U.S.App.D.C. at 34, 543 F.2d at 1347 (slaying of police officer).

█ Here one juror was the father-in-law of a bank teller who had been the victim of a robbery within the preceding year. Yet, the juror in this case, unlike those in *Jackson* and *Bodle*, disclosed the basis for any potential prejudice during voir dire. Furthermore, he assured the court that his awareness of the experience of his daughter-in-law would not affect his impartiality. We decline to establish a *per se* rule of disqualification where a juror is related to a victim of a similar crime.

█ In short, we think the standards set forth in *Irvin* were fully satisfied. Neither venireman had a connection with the case that required his disqualification and both stated that they could put aside any preconceptions they may have had as the result of the experiences of their respective relations. Defendant has not shown that their preju-

dice was so "manifest" as to require reversal of the district court's finding of impartiality.

### III.

Nor do we see error in the instructions which were refused.

█ A. Ms. Jefferson was not an accomplice as that term is generally used. *See United States v. Simmons*, 503 F.2d 831, 837 (5 Cir. 1974). She did not participate in the planning or execution of the robbery. While she was told, after she first afforded hospitality, that a robbery would take place, she was not told that the robbery had occurred when she readmitted the robbers to use her basement. It may well be that she could have been prosecuted as an accessory after the fact, *see* 18 U.S.C. § 3, but we see no basis on which she could be held to have committed bank robbery or aided and abetted the commission of bank robbery, *see* 18 U.S.C. § 2. Thus, Ms. Jefferson was not an accomplice and the refusal to give the accomplice instruction as to her testimony was not error.

█ B. According to the evidence adduced at trial, Jerry Rowell was not an addict, thus there was no foundation for the requested instruction. He testified that "off and on" he had been a regular user of heroin, but that he had not used narcotics on the day he appeared in court. Indeed on that day he had been in custody for five months and had just previously been sentenced to a term of twelve years for his part in the robbery. The rationale of the "addict" instruction, i. e., that an addict's desire to cooperate with the government because of his fear of arrest and subsequent withdrawal pangs and his desire to avoid recrimination by dealers in the drug chain will produce unreliable testimony, was therefore inapplicable to Rowell's situation. *See* Devitt and Blackman, Federal Jury Practice and Instructions, 3rd Ed., § 17.03.

### IV.

█ A criminal defendant has no right to be tried by a jury containing mem-

bers of his particular race or sex, so long as such members are not deliberately excluded. *See, e. g., Swain v. Alabama,* 380 U.S. 202, 203–04, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964). The burden of establishing a prima facie case of purposeful discrimination rests upon the defendant. *Id.* Here defendant makes no attempt to establish such a case. In fact, it appears from the admission of defendant and from the list of jurors in the record that at least three black females and three nonblack males served on defendant's jury. His complaint about the jury's composition is totally devoid of merit.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

While I concur in all other aspects of the majority opinion, with great respect, I dissent as to the issue dealt with in section II B because I believe that the district judge committed reversible error in refusing to strike for cause a prospective juror whose daughter-in-law was a bank teller who had, within a year of Jones' trial, been the victim of a bank robbery. If the prospective juror should have been excused, even though the defendant struck the prospective juror peremptorily, nevertheless the result was prejudicial, since the defendant was thereby precluded from using the peremptory strike on another venireman he might have wished to remove from the jury. *United States v. Rucker,* 557 F.2d 1046, 1049 (4th Cir. 1977).

An impartial jury is an imperative constitutional right under the Sixth Amendment and here the circumstances indicate the probability of partiality. *See United States v. Caldwell,* 178 U.S.App.D.C. 20, 32 n. 47, 543 F.2d 1333, 1345 n. 47 (D.C.Cir. 1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976) ("The law in this jurisdiction is that jurors must be excused for cause if their experience or that of their close relatives is such as to indicate the probability of partiality."). Disclaimer by the juror of any bias is not enough where the prospect of lack of impartiality is great. *United States v. Allsup,* 566 F.2d 68, 71 (9th

Cir. 1977). In *Allsup,* two prospective jurors disclosed during voir dire examination that they worked at other branches of a bank which the defendant was accused of robbing. The court stated, 566 F.2d at 72:

The prospective jurors who worked for the bank robbed should have been excused for cause. Excusing those prospective jurors would have caused a slight inconvenience, which was heavily counterbalanced by the substantial probability that these prospective jurors, despite their disclaimers, could not become the "indifferent" jurors which the Constitution guarantees a criminal defendant.

The present case is stronger than *Allsup* from the defendant's point of view in one respect, weaker in another. It is stronger in that the relative of the prospective juror was not simply a bank employee but was a teller who had herself been the recent victim of a bank robbery. This case is weaker than *Allsup* from the defendant's point of view in that it is not the prospective juror who had been exposed to bank robbery, but rather a relative, his daughter-in-law.

Nevertheless, balancing the slight inconvenience that is occasioned by excusing the juror for cause against the strong probability of bias, I conclude that the defendant was constitutionally entitled to have the prospective juror excused for cause. *Compare United States v. Poole,* 450 F.2d 1082 (3rd Cir. 1971) and *United States v. Poole,* 450 F.2d 1084 (3rd Cir. 1971). Although those related cases went off on other grounds, the court had this to say with respect to a claim that veniremen (one of whom was a bank teller, the other a spouse of a bank teller) should have been excused for cause:

Appellant also contends that the district court erred on voir dire by its denial of the challenge for cause of two veniremen who were, or were related to, bank tellers. In the context of a criminal prosecution for armed bank robbery we find this contention of some significance.

*See also Sims v. United States,* 132 U.S. App.D.C. 111, 114 n. 5, 405 F.2d 1381, 1384 n. 5 (D.C.Cir. 1968). *Sims* goes further than

we would be required to go here for it states that, where a felony murder charge growing out of the fatal shooting of a cabdriver was involved, "jurors should be excused for cause if they are, or are related to, taxidrivers". The opinion did not indicate that the cabdrivers referred to would have had to have been victims of crimes of violence.

*United States v. Caldwell*, 178 U.S.App. D.C. 20, 34, 543 F.2d 1333, 1347 (D.C.Cir. 1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976) appears to represent a retreat from *Sims* for it held it was not reversible error to fail to excuse for cause prospective jurors who were close relatives of police officers, where the charge was murder of a policeman. However, the retreat did not reach the point at which we find ourselves, for the *Caldwell* court was at pains to point out "that none was related to a police officer who had been murdered". Here the close relative of the prospective juror had been the recent victim of a bank robbery. *Cf. Government of the Virgin Islands v. Bodle*, 427 F.2d 532, 534 (3d Cir. 1970), where a juror in the case of someone accused of rape was discovered, after the trial had been completed, to have had a sister who had been raped. Despite the obviously heavier burden on the accused when he first raises the question of the juror's partiality after trial, rather than at the pre-trial voir dire,[1] the Third Circuit concluded

> that the undisclosed information regarding Juror Blyden's sister created a substantial possibility that Blyden was not capable of objective determination of the facts of the case. Under these circumstances, appellant is entitled to a new trial.

While *Mikus v. United States*, 433 F.2d 719, 724 (2nd Cir. 1970) rejects *Sims* out of

hand as persuasive authority on the facts of that particular case, it is, itself, readily distinguishable from the situation before us. There the charge was bank robbery and one prospective juror was the wife of the chairman of another bank. Bank robberies do not customarily occur in that portion of the premises frequented by principal officers such as the chairman or president. Had the indictment in *Mikus* charged abduction of a senior bank official, and the holding of him for ransom, the holding might well have been that refusing to excuse the prospective juror, a wife of a bank chairman, for cause was an abuse of the trial court's discretion.

The majority of the panel declines "to establish a *per se* rule of disqualification where a juror is related to a victim of a similar crime". That constitutes a suggestion that the matter of whether to excuse for cause was within the discretion of the trial judge, and could have been decided either way. While the degree of relationship between the prospective juror and the victim of a prior, similar crime may in other cases become attenuated enough to make the decision a discretionary one, I am satisfied that, absent some extraordinary circumstance not present here, the rule should be generally the same in all cases involving a parent-in-law and child-in-law, and that it should require excuse for cause upon a defendant's request.[2] Otherwise we may be confronted with a situation where different judges in a single district may always excuse, never excuse, or sometimes excuse and sometimes not excuse. Such a situation would be incompatible with the even-handed application of justice.

Since the position I have adopted would lead to a new trial, and since there is only a remote possibility that the same issue would arise on retrial, it is inappropriate to ex-

---

1. No questions directed at the basis for bias involved were put specifically to the prospective juror in *Bodle*, only general questions designed to elicit information as to possible bias. In Jones' case, by contrast, the grounds for bias was clearly identified during the voir dire.

2. The challenged venireman whose relative had been a recent bank robbery victim stated that

his daughter-in-law lived with him in the past but "[n]ot at the present." While the prospective juror had not talked about the robbery with his daughter-in-law, and knew no details, those circumstances are as consistent with concern that she not be reminded of a traumatic experience as they are with indifference on the part of the venireman.

press an opinion as to whether it was reversible error to refuse to excuse for cause a prospective juror who was the spouse of a bank teller, where the bank teller had not been the victim of a bank robbery. *Cf. United States v. Poole, supra,* 450 F.2d at 1085.