874 F.2d 219
 Jamie Nicole POYNTER, an infant under the age of 18 years,
who sues by her parent and next friend, Barbara
Sue POYNTER, Plaintiff-Appellant,
and
Barbara Sue Poynter, individually; William David Poynter,
individually, Plaintiffs,
v.
Bruce A. RATCLIFF, MD; Ted P. Haddox, MD, Defendants-Appellees.
 No. 88-2539.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 12, 1989.
Decided May 12, 1989.
Rehearing and Rehearing In Banc Denied June 15, 1989.
 
 1
 Lee Blum Forb (Laurie Garrigan McKowen, Hunt & Wilson, on brief) for plaintiff-appellant.
 
 
 2
 D.C. Offutt, Jr. (Cheryl A. Eifert, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, on brief) for defendants-appellees.
 
 
 3
 Before RUSSELL and SPROUSE, Circuit Judges, and HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 
 HENDERSON, District Judge:
 
 4
 This is an appeal from a jury verdict in a medical malpractice case. Jamie Nicole Poynter, on whose behalf this suit was brought, is a ten-year-old girl who suffers from cerebral palsy. The plaintiff, Barbara Sue Poynter, is Jamie's mother. Poynter commenced this action against the defendants, Bruce A. Ratcliff, M.D. and Ted P. Haddox, M.D., alleging that their negligent prenatal care caused Jamie's cerebral palsy. Following an eight-day trial, the jury returned a verdict for the defendants. The plaintiff appeals, asserting the district judge erred in failing to excuse two jurors for cause and in denying the plaintiff's motions for directed verdict and new trial. Finding no error, we affirm.
 
 
 5
 The record reveals the following uncontroverted facts. In early 1978, Poynter became pregnant and on July 11 of that year came under the care of Drs. Ratcliff and Haddox, who share an obstetrics and gynecology practice in Huntington, West Virginia. On August 24, she visited the emergency room of the Cabell-Huntington Hospital, complaining of swelling in her ankles and feet. She was admitted to the hospital by Dr. Haddox and treated for pre-eclampsia. During her hospital stay, she underwent an ultrasound examination which revealed that she was bearing twins. Poynter was discharged from the hospital on September 3 and visited the defendants' office regularly during the following weeks. On September 22, a second ultrasound was performed. That examination detected only one heartbeat and indicated that one of the twins was growing at a faster rate than the other. Poynter visited Dr. Ratcliff again on September 25, displaying more severe symptoms of pre-eclampsia. After examining her, Dr. Ratcliff sent her home. On October 2, Poynter visited Dr. Haddox who had her hospitalized the following day. On October 5, another ultrasound was performed, which confirmed that one of the twins had died. Later that day, Dr. Haddox performed an oxytocin challenge test and an amniocentesis to evaluate the living twin's condition. The following day, October 6, he performed an emergency caesarean section and delivered Jamie. The second twin was stillborn. About a year later, Jamie was diagnosed as suffering from cerebral palsy.
 
 
 6
 A six-member jury was selected on July 21, 1987, and the trial commenced on July 22, 1987. At the close of all the evidence, the plaintiff moved for a directed verdict on the defendants' liability, asserting that the undisputed evidence established that the defendants deviated from the applicable standard of care, that their negligence caused Jamie's condition and that Jamie had suffered damages because of her condition. The district judge denied the motion and submitted the entire case to the jury. The jurors were given a special verdict form which provided for separate findings concerning negligence, causation and damages. The form's instruction directed the jurors that, if they found no negligence, they should so indicate on the form and return a verdict for the defendants without considering causation or damages. When the jurors returned the completed form to the judge, it revealed a single finding of no negligence. Accordingly, judgment was entered for the defendants.
 
 
 7
 Following judgment, the plaintiff filed a timely motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district judge denied the motion by written order.
 
 
 8
 On appeal, the plaintiff asserts the district judge erred in refusing to excuse two jurors for cause, in denying the plaintiff's directed verdict motion and in denying the motion for a new trial. We address each alleged error separately.
 
 
 9
 First, the plaintiff contends it was error not to excuse for cause two prospective jurors, Jeanette E. Puckett and Patricia Wilson. Puckett stated on voir dire that Dr. Haddox had been her regular gynecologist for six years, although she visited his office only once a year for an annual check-up. Wilson disclosed that she had worked as a medical technician in a doctor's office for eight years, had two cousins who were doctors and was at that time a defendant in a medical malpractice lawsuit. The plaintiff asserts the judge should have excused these two jurors for bias because of Puckett's relationship with Dr. Haddox and Wilson's involvement in the malpractice lawsuit.
 
 
 10
 A juror is presumed impartial and the existence of a preconception is insufficient to rebut this presumption if the juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961); United States v. Grandison, 780 F.2d 425, 433 (4th Cir.1985), vacated on other grounds, 479 U.S. 1076, 107 S.Ct. 1270, 94 L.Ed.2d 132 (1987); United States v. Jones, 608 F.2d 1004, 1007 (4th Cir.1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 773 (1980). Both Puckett and Wilson stated during voir dire that their personal circumstances would not affect their judgment in the lawsuit should they be selected as jurors,[1] and it was within the district judge's discretion to assess the credibility of those statements. United States v. Thompson, 744 F.2d 1065, 1068 (4th Cir.1984). The judge found Puckett and Wilson credible and, accordingly, denied the plaintiff's motion to strike them for cause. A trial judge has very broad discretion in deciding whether to excuse a juror for cause and his decision will not be overturned except for manifest abuse of that discretion. United States v. Grandison, 780 F.2d 425, 533 (4th Cir.1985), vacated on other grounds, 479 U.S. 1076, 107 S.Ct. 1270, 94 L.Ed.2d 132 (1987); United States v. Jones, 608 F.2d 1004, 1007 (4th Cir.1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 773 (1980). We find no abuse of discretion in the district judge's decision not to excuse Puckett and Wilson. See Jones, 608 F.2d at 1007-08 (judge in bank robbery prosecution did not abuse discretion in refusing to excuse juror whose wife was bank employee or juror whose daughter had been victim of bank robbery).
 
 
 11
 Nevertheless, the plaintiff urges that we adopt per se rules disqualifying potential jurors in medical malpractice lawsuits who are current patients of a defendant doctor or who are themselves defendants in a pending malpractice suit. We view such rules, however, as exceptional and have adopted them only to disqualify jurors whose circumstances, such as a financial interest in the trial's outcome, show a clear likelihood of prejudice. See, e.g., Gladhill v. General Motors Corp., 743 F.2d 1049, 1050-51 (4th Cir.1984) and Chestnut v. Ford Motor Co., 445 F.2d 967, 971-72 (4th Cir.1971) (holding stockholder in corporation which is party to lawsuit is incompetent to serve on jury); cf. Jones, 608 F.2d at 1007-08 (no per se rule disqualifying juror who is related to a victim of a similar crime); Garland v. United States, 182 F.2d 801, 802 (4th Cir.1950) (seating of juror married to uncle of prosecuting attorney not error). Such is not the case here. Although a particular patient or malpractice defendant might warrant, or require, excuse for cause in a given case, we do not think that either circumstance necessarily impairs a juror's partiality or prevents him from rendering a decision based solely on the evidence and the law. The decision whether to exclude prospective jurors such as Puckett and Wilson should be made in each instance on the particular facts involved and under the established principles governing excuse for cause.[2] As we have already found, it was not error under these facts for the district judge to refuse to excuse these individuals.
 
 
 12
 Next, the plaintiff contends the district judge should have directed a verdict for the plaintiff on the issue of negligence because the undisputed evidence at trial established the defendants' negligence as a matter of law. We disagree.
 
 
 13
 A directed verdict should be granted where there is no substantial evidence in opposition and, without weighing the credibility of witnesses, there can be but one reasonable conclusion as to the verdict. Business Dev. Corp. of N.C. v. United States, 428 F.2d 451, 453 (4th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193 (4th Cir.1967). This standard was not met here. Although evidence of the defendants' negligence was presented,[3] that evidence was not undisputed. Dr. Haddox testified that in his medical opinion he and Dr. Ratcliff had not deviated from accepted standards of care. That opinion constituted sufficient evidence from which the jury could have concluded that the defendants were not negligent. We therefore hold it was not error to deny the plaintiff's directed verdict motion and to submit the issue of negligence to the jury.
 
 
 14
 Finally, the plaintiff appeals the denial of her motion for a new trial on the ground that the verdict was against the clear weight of the evidence. A motion for a new trial is governed by a different standard from a directed verdict motion. Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980). Under Rule 59 of the Federal Rules of Civil Procedure, a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial. Id. at 891-92; Williams v. Nichols, 266 F.2d 389, 392 (4th Cir.1959). The district judge below considered the credibility of the expert witnesses and concluded that the verdict was neither against the clear weight of the evidence nor a miscarriage of justice. That ruling was a matter resting within his sound discretion and is not reviewable save in the most exceptional circumstances. Lindner v. Durham Hosiery Mills, Inc., 761 F.2d 162, 168 (4th Cir.1985); Aetna Casualty & Sur. Co. v. Yeatts, 122 F.2d 350, 354 (4th Cir.1941). We find no exceptional circumstances here and conclude that the district judge did not abuse his discretion in denying the plaintiff's motion.
 
 
 15
 AFFIRMED.
 
 SPROUSE, Circuit Judge, dissenting:
 
 16
 I respectfully dissent, although I agree that there was sufficient evidence to support the trial court's refusal to grant a directed verdict. In my view, it erred in not excusing jurors Puckett and Wilson for cause.
 
 
 
 [1]
 In fact, after individual voir dire of both Puckett and Wilson, the plaintiff's counsel indicated he would be "happy" to have them serve as jurors
 
 
 [2]
 The plaintiff has cited two state court cases holding that a patient is incompetent to serve as a juror in litigation involving his physician. See Jones v. Shea, 148 Vt. 307, 532 A.2d 571 (1987); Marcin v. Kipfer, 117 Ill.App.3d 1065, 73 Ill.Dec. 510, 454 N.E.2d 370 (1983). The weight of authority, however, is to the contrary. See, e.g., Kimbley v. Kaiser Found. Hosps., 164 Cal.App.3d 1166, 211 Cal.Rptr. 148 (1985); McCollum v. State, 74 So.2d 74 (Fla.1954); Hill v. Hospital Auth. of Clarke County, 137 Ga.App. 633, 224 S.E.2d 739 (1976); Stevens v. Barnhart, 45 Md.App. 289, 412 A.2d 1292 (1980); Mount v. Welsh, 118 Or. 568, 247 P. 815 (1926); Family Medical Bldg., Inc. v. State Dept. of Social & Health Servs., 37 Wash.App. 662, 684 P.2d 77, rev'd in part on other ground, 104 Wash.2d 105, 702 P.2d 459 (1984); West Virginia Dept. of Highways v. Fisher, 289 S.E.2d 213 (W.Va.), cert. denied, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). The plaintiff has also cited two criminal appeals from Tennessee disqualifying potential jurors who were themselves defendants in other criminal prosecutions. See Durham v. State, 182 Tenn. 577, 188 S.W.2d 555 (1945); State v. Davis, 649 S.W.2d 12 (Tenn.Crim.App.1982). We find the reasoning of those courts unpersuasive. As we have already noted, we do not believe that a potential juror's involvement in similar litigation presents so strong a likelihood of bias that a per se rule is necessary
 
 
 [3]
 Dr. Ratcliff as well as the plaintiff's and the defendants' experts testified that the defendants deviated from accepted standards of medical care in failing to take immediate action following the September 22 ultrasound