## In re Anonymous No. 39 D.B. 90

Disciplinary Board Docket No. 39 D.B. 90. SCHILLER, *Member,* August 13, 1991—

### HISTORY OF PROCEEDINGS

On April 4, 1990, the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition contained two charges of misconduct, and alleged that respondent had engaged in two separate instances of misconduct involving his former employer and a lending bank.

Respondent filed an answer to the petition for discipline on May 25, 1990, at which time he denied having engaged in any misconduct and requested that the petition for discipline be dismissed.

The matter was referred to Hearing Committee [ ], which was chaired by [ ], Esquire, and included [ ], Esquire, and [ ], Esquire.

On October 26, 1990, petitioner filed a lengthy brief to the Hearing Committee, requesting that respondent be suspended from the practice of law for a minimum of three years.

Respondent filed a brief to the Hearing Committee on November 15, 1990, and requested that the petition for discipline be dismissed, or that respondent receive private discipline should a determination of misconduct be made.

On April 12, 1991, the Hearing Committee filed a majority and minority report. The majority of the Hearing Committee recommended that the charges against respondent be dismissed, while member [ ] suggested that respondent receive a public censure and be placed on probation for a period of two years.

On May 1, 1991, petitioner filed a brief on exceptions to the Hearing Committee report, and requested that respondent be suspended from the practice of law for a period of two to three years.

Respondent filed a brief in opposition to petitioner's exceptions on May 20, 1991, and again asked that the petition for discipline be dismissed.

The matter was adjudicated at the May 30, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Respondent was born in 1952, admitted to the Pennsylvania bar in 1985, and currently maintains an office for the practice of law in [ ], Pennsylvania.

## CHARGE I

(2) In May 1985, respondent began to practice law in association with [A], Esquire.

(3) Initially, respondent was paid a salary of $300 per week by [A], an amount which was subsequently increased.

(4) In addition to a salary, [A] furnished respondent with health insurance, as well as periodic bonuses. The original agreement, which was not in writing, also called for [A] to assume lease payments for respondent's automobile beginning in July 1987.

(5) At the time respondent became affiliated with [A's] office, [A] was the sole authorized signatory of a general account in the [B] Bank which was captioned "[A], Esquire." The account was apparently used to pay routine business and operating expenses of the office, as well as [A's] personal expenditures. Legal fees which were generated by [A] and respondent were deposited in this account. Between July 1987 and March 1988, respondent wrote numerous checks on this account, and signed the checks with his own name.

(6) During the time in question, [A] was regularly out of the office for extended periods of time, and often called on a less than weekly basis. It was, therefore, incumbent upon respondent to assume the routine administrative duties of the office.

(7) In 1986, attorney [A] changed his sign from "[A], Esquire," to "[A] and [respondent]" and began introducing respondent as "my partner."

(8) In April 1987, [A] and respondent opened a savings account captioned "[A] & [respondent]" at the [B] Bank. The account held excess funds not immediately required to meet the business expenses of the office, and also supplied monies to the [A] account when extra cash was needed to satisfy operating costs.

(9) In February and March 1988, respondent directed the office secretary to deposit legal fees into the savings account rather than the [A] account, where such monies were usually held.

(10) In March and April 1988, respondent withdrew approximately $3,200 from the two accounts for the purpose of paying car and life insurance premiums and personal income taxes.

(11) By letter dated April 15, 1988, respondent tendered his resignation to [A]. An argument ensued about respondent's withdrawals from the two accounts. On December 8, 1988, the parties executed an agreement and mutual release whereby respondent paid [A] $3,000 and each party was released of any liability.

## CHARGE II

(12) In February 1988, respondent and his wife made a mortgage application with the [C] Savings Bank.

(13) As part of the mortgage review, the bank mailed its applicants' employers an independent employment verification form. Respondent informed the secretary in the [A]-[respondent] office that the form was due to arrive, and she agreed to fill it out on his behalf.

(14) At the time the employment verification form arrived, the secretary was on vacation. Respondent affixed her signature to the form and returned it to the bank.

(15) The secretary had earlier signed a very similar mortgage filing on respondent's behalf.

(16) The secretary testified before the Hearing Committee that it was common practice in the [A]-[respondent] office for everyone to sign each other's signatures to papers, and that she would have signed the form as completed by respondent.

(17) Respondent slightly inflated his earned income on the form.

(18) [D], an officer of the bank, testified that the bank was aware of the discrepancy, that respondent would still have been granted the mortgage had his true income been divulged, and that he had no intention of pursuing the matter.

## CONCLUSIONS OF LAW

The Office of Disciplinary Counsel has failed to prove that the evidence is sufficient to prove ethical misconduct since a preponderance of that evidence does not establish the charged violation and the proof is not clear and satisfactory.

## DISCUSSION

The threshold question in any disciplinary proceeding is whether attorney misconduct has occurred. The Office of Disciplinary Counsel bears the burden of proving professional misconduct by a preponderance of clear

and satisfactory evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986).

The first part of the petition for discipline charges respondent with numerous Disciplinary and Professional Conduct Rule violations based upon his alleged misappropriation of funds rightfully belonging to [A], Esquire.

It is undisputed that the funds in question were held in a savings account at the [B] Bank captioned "[A] & [respondent]." It is further undisputed that at this point in time, [A] and respondent worked together and sent out letterhead stationery and listed their telephone number under the heading "[A] and [respondent]."

However, further details about the arrangements between [A] and respondent remain in dispute. In order for petitioner to sustain the burden of proving that respondent misappropriated funds in the "[A] & [respondent]" savings account and therefore, engaged in professional misconduct, clear and satisfactory evidence must demonstrate that respondent was not authorized to withdraw funds from the account.

The Hearing Committee accepted lengthy testimony from respondent on the issue of his authorization to draw monies from the aforementioned savings account. After two days of hearings, at which the committee was in the novel position of being able to render a first-hand assessment of the respondent's demeanor, the committee chose to believe respondent's testimony that he and [A] had a joint savings account.

The Hearing Committee accepted respondent's contentions that the joint savings account was intended to be used by both attorneys for personal expenses,

and that respondent was, therefore, entitled to withdraw the funds in question in April 1988 for the purpose of paying his income taxes. All three members of the Hearing Committee further agreed that [A] had knowledge that respondent was writing checks on a separate bank account captioned "[A], Esquire" for the purpose of administering the office since, as [A] himself admitted, respondent was the person responsible for keeping the office afloat during [A's] many extended absences. Furthermore, the secretary in the office at the time in question testified that respondent's withdrawals from the "[A] and [respondent]" account appeared proper and reasonable in light of the way the office was managed. The Hearing Committee report, therefore, unanimously recommended that Charge I of the petition for discipline be dismissed since respondent's testimony and supporting documents attested to his authorization to draw on the funds in question.

The issue before the Disciplinary Board is the degree of significance to be attached to the Hearing Committee's conclusion that respondent is a credible witness whose exonerating testimony is to be believed. Although disciplinary cases are reviewed de novo at every stage of the proceedings in Pennsylvania, the board will be "guided" by Hearing Committee "findings with respect to matters of credibility." *Office of Disciplinary Counsel v. Wittmaack*, 513 Pa. 609, 522 A.2d 522, 524 (1987); *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 472 A.2d 186, 188 (1983). Because we are confident in the abilities of Hearing Committee [  ] to adequately and accurately assess the demeanor of testifying witnesses, we accept the

conclusion that respondent's testimony is credible. We, therefore, find that Charge I of the petition for discipline has not been proven by a preponderance of clear and satisfactory evidence, and must be dismissed.

The second charge in the petition for discipline alleges misconduct in connection with respondent's filing of a mortgage application and supporting documentation. The gravamen of the charge is that respondent fraudulently filed falsified earned income information in order to obtain a mortgage. It is petitioner's contention that respondent violated 18 U.S.C. §1014 by knowingly submitting falsified mortgage information, and that he, therefore, breached his ethical responsibilities under Pennsylvania law.

The issue before the Disciplinary Board is whether respondent intentionally filed falsified documents for the purpose of defrauding the lending institution considering his mortgage application, and, therefore, acted in an unprofessional manner. In order to prove that 18 U.S.C. §1014 was violated, the information furnished to the financial institution must be knowingly false. See *United State v. Simmons,* 503 F.2d 831 (C.A. Ga., 1974); *United States v. Erskine,* 588 F.2d 721 (C.A. Cal., 1978). It is, therefore, incumbent upon petitioner to prove, by a preponderance of clear and satisfactory evidence, that respondent knowingly supplied [C] Savings Bank with falsified information for the purpose of securing a mortgage.

There are two components of Charge II. First, there is the question of respondent's income as outlined on the earnings verification form he provided to the bank. Respondent claimed earnings which were somewhat

higher than his actual wages. However, these disparities were not so great as to have precluded the mortgage from being granted had the actual amounts of income been divulged.

The second aspect of Charge II concerns respondent's affixing of his secretary's signature to the independent employment verification form sent to the [A]-[respondent] law office by the bank. The secretary had previously signed a similar form on behalf of respondent, and she testified that she had told respondent she would sign the form for him. At the time the form arrived, the secretary was on vacation. Respondent, thus, affixed the secretary's signature to the form and returned it to the bank. The secretary testified that it was common practice in the office for everyone to sign each other's names to things, and that she would have signed the form had she been present.

The issue is, therefore, whether respondent acted unprofessionally when he inflated his earnings and affixed his secretary's signature to the mortgage application questionnaire. We note that respondent has acknowledged that his behavior was less than laudable. The question is whether respondent's conduct should be labeled unprofessional. Although respondent acted in a fashion which was less than exemplary, petitioner has failed to prove that respondent intentionally misrepresented his financial status to the bank for fraudulent purposes, and, therefore, engaged in professional misconduct. The charges against respondent must, therefore, be dismissed.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines, based upon the foregoing

findings and discussion, that the instant petition for discipline be dismissed.

Dr. Gilbert dissents.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, August 13, 1991, upon consideration of the majority report and recommendation of Hearing Committee [ ] and concurring and dissenting opinion filed April 12, 1991; it is hereby ordered that the charges against [respondent], docketed at No. 39 D.B. 90, be dismissed.