John Davis McNEILL, Petitioner–
Appellant,

v.

Marvin POLK, Warden, Central Prison,
Raleigh, North Carolina,
Respondent–Appellee.

No. 05–12.

United States Court of Appeals,
Fourth Circuit.

Argued: Sept. 18, 2006.

Decided: Jan. 31, 2007.

---

**ARGUED:** Milton Gordon Widenhouse, Jr., Rudolf, Widen–House & Fialko, Chapel Hill, North Carolina, for Appellant. Jill Ledford Cheek, North Carolina Department of Justice, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Mark E. Edwards, Edwards and Trenkle, P.L.L.C., Durham, North Carolina, for Appellant. Roy Cooper, Attorney General of North Carolina, Raleigh, North Carolina, for Appellee.

Before KING, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge SHEDD wrote the opinion, in which Judge KING and Judge GREGORY concurred in part. Judge KING wrote an opinion concurring in part and concurring in the judgment. Judge GREGORY wrote an opinion dissenting in part and concurring in part.

## OPINION

SHEDD, Circuit Judge:

John Davis McNeill appeals the district court's dismissal of his petition for writ of habeas corpus. McNeill contends that he is entitled to habeas relief or, at a minimum, an evidentiary hearing on his claims. For the reasons set forth below, we affirm the judgment of the district court.

I

On November 8, 1995, a North Carolina state jury convicted McNeill of first-degree burglary and of the first-degree murder of Donna Lipscomb. The evidence presented at trial tended to show that McNeill had been dating Lipscomb periodically prior to her death. On November 17, 1992, after McNeill and Lipscomb's relationship encountered difficulty, McNeill went to Lipscomb's apartment armed with a knife. After cutting the apartment's telephone lines, McNeill forced his way into the apartment, where he began arguing with Lips-comb. The two then began shoving each other, and McNeill stabbed Lipscomb repeatedly in the upper torso, fatally wounding her.

After the subsequent sentencing phase, the jury found as an aggravating circumstance that McNeill committed the murder while engaged in the commission of burglary. The jury further found two statutory mitigating factors: (1) that McNeill committed the murder while under the influence of mental or emotional disturbance and (2) other circumstances arising from the evidence which are deemed to

have mitigating value. In addition, the jury found seven non-statutory mitigating factors. Weighing these factors, the jury unanimously recommended a sentence of death for the murder conviction, and the trial court imposed that sentence. On the first-degree burglary conviction, the trial court sentenced McNeill to life imprisonment.

On direct appeal, the Supreme Court of North Carolina affirmed McNeill's conviction, *State v. McNeill*, 346 N.C. 233, 485 S.E.2d 284 (1997), and the Supreme Court denied his petition for writ of certiorari, 522 U.S. 1053, 118 S.Ct. 704, 139 L.Ed.2d 647 (1998). McNeill then filed a Motion for Appropriate Relief ("MAR") in the Cumberland County Superior Court. After various pleadings were filed, the superior court denied McNeill's MAR and his later motion for an evidentiary hearing. The state supreme court declined to review the MAR court's denial of relief. *State v. McNeill*, 352 N.C. 154, 544 S.E.2d 237 (2000).

McNeill thereafter filed a petition for writ of habeas corpus in federal court in which he presented 18 claims for review. Eventually, the district court granted Warden Marvin Polk's ("the State") motion for summary judgment and dismissed the petition. The district court, however, granted a certificate of appealability ("COA") on the following issues: (1) whether McNeill was denied effective assistance of counsel when trial counsel admitted without McNeill's consent that he was guilty of non-felonious breaking and entering, (2) whether McNeill was denied effective assistance of counsel when trial counsel ad-

mitted without McNeill's consent that he was guilty of second-degree murder, and (3) whether McNeill's due process rights were violated when the trial court permitted the jury to find him eligible for a death sentence if it concluded that the aggravating and mitigating circumstances were in equipoise.[1] On appeal, we expanded the COA to include three additional issues: (1) whether McNeill's due process rights were violated when a juror consulted a dictionary to determine the meaning of the term "mitigate"; (2) whether McNeill was denied effective assistance of counsel when trial counsel failed to investigate and present certain evidence concerning McNeill's behavior, character, and mental capacity; and (3) whether McNeill's due process rights were violated when a juror failed to disclose that his half-sister had been murdered by an ex-boyfriend.

## II

We review de novo the district court's application of the standards of 28 U.S.C. § 2254(d) to the findings and conclusions of the MAR court. *Robinson v. Polk*, 438 F.3d 350, 354–55 (4th Cir.2006). Pursuant to this review, our inquiry is limited to an analysis of whether the MAR court's adjudication of McNeill's federal claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

1. At oral argument, McNeill abandoned his claim that the jury instructions were constitutionally flawed because they permitted the imposition of a death sentence where the aggravating and mitigating circumstances are in equipoise. *See Kansas v. Marsh*, —— U.S. ——, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006)

(holding that state statute which permits imposition of a death sentence when jury determines that aggravating and mitigating circumstances are in equipoise does not violate Eighth Amendment). Accordingly, we do not consider this claim further.

in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

■ The "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have meanings which may be satisfied independently of each other. *Williams v. Taylor,* 529 U.S. 362, 404-05, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A state court decision is an unreasonable application of clearly established federal law "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* Having said this, we note that a state court's decision will not be disturbed where it is premised on an erroneous or incorrect—but not unreasonable—application of federal law. *Williams,* 529 U.S. at 410, 120 S.Ct. 1495.

## III

### A.

I begin my analysis with the State's contention that the rules of procedural default bar our review of the merits of McNeill's claims that Juror Sermarini improperly consulted a dictionary and that Juror Lee failed to disclose that his half-sister had been murdered.[2]

### 1.

■ The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." *Burket v. Angelone,* 208 F.3d 172, 183 (4th Cir.2000). A state procedural rule is adequate if it is regularly or consistently applied by the state courts, *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and it is independent if it does not depend on a federal constitutional ruling, *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■ The MAR court rejected several of McNeill's claims, including his improper influence and biased juror claims, based on N.C. Gen.Stat. § 15A–1420(b)(1), which provides:

> A motion for appropriate relief made after the entry of judgment must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcript of the case or which are not within the knowledge of the judge who hears the motion.

Specifically, the MAR court found that these claims were supported only by inadmissible evidence in the form of two affidavits which contained hearsay and one unsworn, signed statement of a juror. After

---

**2.** Because Judge King and Judge Gregory do not agree with my conclusion that McNeill's juror misconduct claims are procedurally defaulted, I write only for myself in part III A of this opinion.

excluding this inadmissible evidence, the MAR court determined that McNeill's claims were not supported by the requisite evidence under the statute, and it denied relief.[3] The question now before us is whether the MAR court's rejection of an MAR supported by inadmissible evidence constitutes an adequate and independent state procedural rule.[4] I conclude that it does.

In *Richmond v. Polk,* 375 F.3d 309 (4th Cir.2004), we held that § 15A–1420(b)(1) qualifies as an adequate and independent state procedural rule when it is employed by the state courts to deny, at the pleading stage, MAR claims which are supported by insufficient documentary evidence. There, the MAR court, relying on § 15A–1420(b)(1), summarily denied two ineffective assistance of counsel claims because they were presented with no affidavit or supporting evidence and one ineffective assistance claim because the proffered affidavit "did not actually support Richmond's claim." 375 F.3d at 322. On habeas review, we held that procedural default barred review of these claims. *Id.* In so holding, we found that § 15A–1420(b)(1) "is an adequate state procedural rule because an unambiguous court rule such as N.C. Gen.Stat. § 15A–1420(b)(1) is necessarily firmly established ... and because North Carolina courts [have] regularly and consistently applied it...." 375 F.3d at 323 (internal punctuation and citations omitted). We further held that § 15A–1420(b)(1) "is an independent state procedural rule given that it does not depend on any federal constitutional ruling." 375 F.3d at 324.

I believe that our decision in *Richmond,* which was based on facts nearly identical to those before us now, applies here. I see no distinction between a state court's denial of an MAR which is supported by affidavits deemed to be unhelpful (as in *Richmond*) and a denial of an MAR which is supported by affidavits found to be inadmissible (as in the instant case). In both situations, the state court has, at the pleading stage, found an MAR to be insufficiently supported by affidavit or documentary evidence under § 15A–1420(b)(1). *Richmond,* then, would appear to foreclose our review of the merits of McNeill's claims.[5]

■ However, McNeill contends that § 15A–1420(b)(1) is not an adequate state rule of procedure as applied in this case. As discussed earlier, a rule is adequate if the state courts have applied it in a consistent and regular manner. *Johnson,* 486 U.S. at 587, 108 S.Ct. 1981. Therefore, for his argument to succeed, McNeill must

---

**3.** To the extent that McNeill maintains that the state court erred when it interpreted § 15A–1420(b)(1) as requiring that an MAR be accompanied by *admissible* affidavits, I decline to question the MAR court's view of the statute's meaning. *See Barnes v. Thompson,* 58 F.3d 971, 974 n. 2 (4th Cir.1995) (noting that a federal habeas court "does not have license to question a state court's finding of procedural default," nor to question "whether the state court properly applied its own law").

**4.** The MAR court's alternative ruling that McNeill's claims fail on the merits does not preclude consideration of procedural default

here. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

**5.** Our holding in *Richmond* also proves fatal for McNeill's assertion that the MAR court acted improperly in ruling on the admissibility of evidence at the pleading stage. In *Richmond,* the state court denied Richmond's MAR on the pleadings based on its conclusion that one of the affidavits proffered by Richmond did not support his position, and we subsequently held the claim to be procedurally defaulted. 375 F.3d at 320, 328–29. In so holding, we found no fault in the MAR court's resolution of evidentiary issues at the pleading stage.

point to "a non-negligible number of cases" in which the North Carolina courts have allowed an MAR to proceed where it was supported by inadmissible evidence. *McCarver v. Lee,* 221 F.3d 583, 589 (4th Cir.2000). Nevertheless, "consistent or regular application of a state rule of procedural default does not require that the state court show an undeviating adherence to such rule admitting of no exception so long as the rule has as a general rule been applied in the vast majority of cases." *Brown v. Lee,* 319 F.3d 162, 170 (4th Cir. 2003).

In an attempt to make this showing, McNeill cites *Fullwood v. Lee,* 290 F.3d 663 (4th Cir.2002); *Conner v. Polk,* 407 F.3d 198 (4th Cir.2005); *Jones v. Cooper,* 311 F.3d 306 (4th Cir.2002); *Hinton v. Hinton,* 196 N.C. 341, 145 S.E. 615 (1928); and *State v. Buckom,* 126 N.C.App. 368, 485 S.E.2d 319 (1997). McNeill maintains that in each of these cases the courts neglected to apply the procedural bar of § 15A–1420(b)(1). However, upon close examination, these cases simply do not support McNeill's argument.

In *Conner,* the MAR court had stricken affidavits which contained inadmissible hearsay. Despite this ruling, on subsequent habeas review we examined the substance of these affidavits. In doing this, we expressly refused to comment on the propriety of the MAR court's exclusion of the affidavits. 407 F.3d at 205 n. 3. Yet *Conner* actually cuts against McNeill's position because the fact that the state court struck portions of an affidavit as containing inadmissible hearsay shows a consistent rather than inconsistent application of the evidentiary rule now at issue.

Likewise, in *Jones,* the MAR court, "relying on an unspecified state rule of evidence, quashed the affidavit and dismissed the MAR." 311 F.3d at 309. Again, on habeas review, we implicitly accepted the affidavit and rejected the petitioner's claims on the merits. Nonetheless, as with *Conner,* we did not question whether the state court's ruling was proper, and our review of the merits of Jones' claims has no bearing on the consistency of the state courts' application of § 15A–1420(b)(1).

*Hinton* and *Buckom,* which McNeill cites as instances in which the North Carolina courts relied on affidavits or other evidence to establish juror misconduct, similarly fail to aid him. Neither gives any indication as to whether the affidavits contained hearsay or other inadmissable evidence. In addition, *Hinton* does not involve the application of § 15A–1420(b)(1), limiting its relevance here. Further, I cannot discern whether the State ever raised the procedural bar of § 15A–1420(b)(1) in *Buckom. See Meadows v. Legursky,* 904 F.2d 903, 907 (4th Cir.1990) (en banc) (discounting, for purposes of adequacy inquiry, relevance of cases where it was not evident that State had advanced procedural bar).

Finally, *Fullwood* cannot bear the import which McNeill would assign to it. Although in *Fullwood* both the MAR court and this court considered the affidavit of a juror attesting to the misconduct of another juror, this affidavit was, at least in part, not based on hearsay. 290 F.3d at 676. Furthermore, it is unclear whether the State invoked the procedural bar of § 15A–1420(b)(1), *see Meadows,* 904 F.2d at 907, and our opinion gives the impression that it did not. Instead, it appears that the evidentiary question in *Fullwood* was the extent to which a juror's affidavit could be used to impeach a verdict. 290 F.3d at 679–80. In any event, even if the state court did decide not to apply § 15A–1420(b)(1) in *Fullwood,* this one instance does not suffice to satisfy McNeill's burden of showing a non-negligible number of

cases in which the procedural rule was not enforced. *Brown*, 319 F.3d at 170.

■ In *Richmond*, we found § 15A–1420(b)(1) to be an adequate and independent state rule of procedure, and McNeill fails to show that the state courts have applied this rule inconsistently with regard to inadmissible evidence. Therefore, I conclude that § 15A–1420(b)(1), when used to deny an MAR which is unsupported by admissible affidavits or other evidence, is an adequate and independent state procedural rule which bars consideration of the merits of a petitioner's claims on federal habeas review.[6] Having reached this conclusion, I turn to the question of whether McNeill has made a showing of cause and prejudice sufficient to overcome his procedural default.[7]

## 2.

■ To establish cause, McNeill must "show that some objective factor external to the defense impeded counsel's efforts to comply with" § 15A–1420(b)(1). *Richmond*, 375 F.3d at 324. Examples of these external factors are situations where the factual or legal basis for a claim is not reasonably available to counsel or where some interference by officials makes compliance with the procedural rule impracticable. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

In an apparent attempt to argue cause, McNeill asserts that he had no way of presenting a claim of juror misconduct without a means of compelling a juror to testify by way of deposition or subpoena at an evidentiary hearing and that neither of these means was available in state court. In addition, McNeill maintains that it is unreasonable to expect him to obtain an affidavit from the very juror accused of misconduct in order to receive an evidentiary hearing or a ruling on the merits of his claim.

I find these arguments to be unpersuasive for two reasons. First, as the State notes, McNeill had the ability to seek a deposition or other discovery at the time he filed his MAR, thus providing him with a way of presenting evidence in support of his MAR. *See State v. Buckner*, 351 N.C. 401, 527 S.E.2d 307 (2000) (holding that a party has the right to seek discovery upon filing of an MAR). Second, McNeill's contention that it is unreasonable to require him to obtain admissible evidence from the particular juror accused of misconduct is unconvincing. Based on North Carolina's rule permitting the introduction of juror testimony regarding the existence of an outside influence upon the jury, McNeill could have supported his MAR with an affidavit from any member of the jury. Moreover, McNeill obtained an unsworn statement from Juror Sermarini, the very juror accused of engaging in misconduct by consulting a dictionary. It is not unreasonable to require that McNeill go one step further and obtain admissible evidence from Sermarini. Given this and given the availability of discovery, it is also

---

6. McNeill is incorrect in his contention that this case is controlled by *Robinson* and *Conaway v. Polk*, 453 F.3d 567 (4th Cir.2006). *Robinson* did not address procedural default, and in *Conaway* the MAR court had not relied on a state procedural rule as a basis for denying relief.

7. As noted earlier, a habeas petitioner can also escape procedural default by demonstrating a fundamental miscarriage of justice. To do so in the context of a death sentence, he must prove by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under the applicable state law. *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). McNeill does not argue that he meets this standard.

not unreasonable to expect McNeill to obtain admissible evidence from Juror Lee, who is accused of bias for failing to reveal that his half-sister was murdered by an ex-boyfriend. For these reasons, McNeill has failed to show cause sufficient to overcome his procedural default.[8]

Due to McNeill's procedural default, I do not reach the merits of his claims of an improper influence upon the jury and of a biased juror. Accordingly, I would affirm the district court's dismissal of these claims on the basis of procedural default.

### B.

We now address McNeill's claims that he was denied his right to effective assistance of counsel. As noted earlier, McNeill contends that his trial counsel failed to gather and present evidence of his good character and of his impaired mental capacity and conceded, without permission, that he was guilty of second-degree murder and of non-felonious breaking and entering.

### 1.

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under this standard, two prongs must be met: (1) the petitioner must show that his counsel's performance "fell below an objective standard of reasonableness," and (2) the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Id.* at 688, 694, 104 S.Ct. 2052.

In this case, the MAR court considered and denied McNeill's ineffective assistance of counsel claims on the merits, finding that trial counsel's representation was not objectively unreasonable.[9] Accordingly, the deferential standard mandated by § 2254(d) applies.

### 2.

McNeill first contends that his trial counsel was ineffective in that he failed to conduct a sufficient investigation and to present evidence of McNeill's good character and of impaired mental capacity. In support of this claim, McNeill alleges three specific instances in which trial counsel was ineffective: (1) counsel failed to investigate, develop, and present sufficient mitigation evidence by ineptly investigating and examining witnesses concerning McNeill's background and mental capacity; (2) counsel presented materially false and inaccurate information suggesting McNeill adapted poorly to incarceration; and (3) counsel failed to present expert testimony concerning McNeill's impaired mental capacity. On each claim, we find the decision of the MAR court to be correct.

### a.

McNeill contends that trial counsel failed to investigate, develop, and present sufficient mitigation evidence by ignoring or neglecting to find five character witnesses who knew McNeill during junior high school. However, the trial transcript indicates that trial counsel did present evi-

---

8. As McNeill has failed to show cause, I do not engage in an analysis of prejudice.

9. The record indicates that the MAR court denied McNeill's ineffective assistance of counsel claims both on procedural grounds and on the merits. While it appears that the State argued before the district court that

consideration of these claims was barred by procedural default, the State makes no such argument here. Thus, we reach the merits of these claims. *Wilson v. Ozmint*, 352 F.3d 847, 868 (4th Cir.2003) (stating that procedural default can be waived).

dence from character witnesses who knew McNeill as an adult and who could testify to his character at the time of the murder and at the time of trial and sentencing. Specifically, Garris Faison, McNeill's supervisor, testified as to McNeill's work ethic and as to his responsibility as an electrician, and William Harvey Thornton, Jr., McNeill's neighbor, testified that he observed McNeill's loving relationship with the victim and her children. Further, Mark Hutchens, McNeill's probation officer for a prior drug offense, testified that McNeill had successfully completed his probation, paid all fines due, and completed community service. Hutchens also told the jury that he would rate McNeill very highly in terms of his performance as a probationer. Finally, Anne Campbell, McNeill's former jailor, testified that McNeill was an exemplary inmate, "every detention officer's dream," and a "blessing." J.A. 772, 783. She further stated that McNeill would lead other inmates in Bible studies and prayers. This evidence was certainly more probative of McNeill's character than evidence which would have been elicited from witnesses who knew him in the more distant past.

In addition, the record indicates that trial counsel, when confronted with overwhelming evidence tending to establish that McNeill was guilty of a particularly heinous murder, chose to pursue a strategy of arguing that McNeill lacked the mens rea requisite for premeditation. Pursuant to this strategy, counsel retained a psychologist, John Warren, and presented exhaustive mental health testimony designed both to rebut mens rea at the guilt phase and to establish a basis for mitigation at the sentencing phase. This strategic choice was borne out in the presentation of evidence which indicated that McNeill did not view a knife as a lethal weapon and that he did not understand Lips-comb's communication that she did not want to talk to him. Further testimony of Warren—who testified at both the guilt and sentencing phases—demonstrated that McNeill had a history of alcohol abuse in his family, had been a witness to frequent fights with weapons, and had seen seven or eight people shot or stabbed. This evidence brought out the details of McNeill's background and childhood which he now claims were lacking. Warren also testified as to the effects on McNeill of the history of substance abuse, criminal behavior, and violence in his family and indicated that these effects would include aggression, impulsivity, low self-esteem, dependency, depression, and substance abuse. Finally, Warren stated that McNeill was in an intoxicated, emotionally aroused state when he entered the victim's apartment, and that this augured against any premeditation to kill.

In the face of the investigation conducted by trial counsel and the evidence presented at trial, the MAR court's finding that counsel's investigation and presentation of mitigation evidence and character witnesses did not fall below an objective standard of reasonableness was not contrary to or an unreasonable application of clearly established federal law.

b.

McNeill next claims that counsel was ineffective in presenting evidence of an infraction he committed while in prison, evidence which McNeill contends was materially false and misleading. The evidence of the prison infraction was presented in the context of Warren's testimony regarding McNeill's adaptation to prison life and exemplary behavior in prison. In testifying as to the infraction, Warren was reading from prison records, and he noted that McNeill had no infractions except that he "failed to report to work" and, as a result, was given "forty-eight hours of ad-

ministrative segregation." J.A. 795. Warren further noted that the infraction was "very, very minor" in the context of McNeill's overall positive adjustment to prison life. J.A. 797. McNeill contends that he told trial counsel that the infraction report was an error and that he did not commit the infraction, yet counsel allowed the infraction to be presented to the jury anyway.

The MAR court's denial of this claim of ineffective assistance of counsel was not unreasonable. First, McNeill presented no admissible evidence in support of his position that he did not commit the infraction. Second, the infraction was presented in the context of overwhelmingly positive testimony regarding McNeill's time in prison. Third, the trial judge gave a peremptory instruction that "all of the evidence tends to show that the defendant made a good adjustment to prison while awaiting trial." J.A. 920. In these circumstances, trial counsel's presentation of evidence of the infraction was not objectively unreasonable.

### c.

■ Next, McNeill asserts that counsel was deficient in failing to present expert testimony regarding his diminished capacity. However, the record indicates that McNeill presented abundant evidence of his diminished mental capacity in his case-in-chief during the guilt phase of his trial. We find without merit McNeill's contention that counsel was ineffective by not presenting this evidence again at the sentencing phase, especially as the trial court instructed the jury that it could consider, during the sentencing phase, all evidence presented during the guilt phase. *See* N.C. Gen.Stat. § 15A–2000(a)(3). Accordingly, the MAR court's rejection of this claim on the merits was not contrary to or

an unreasonable application of clearly established federal law.

### 3.

■ We next consider McNeill's argument that counsel was ineffective by admitting, without McNeill's consent, that he was guilty of second-degree murder and non-felonious breaking and entering. Under *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), trial counsel's performance cannot be constitutionally deficient based solely on his failure to seek McNeill's consent before admitting guilt to the jury. Instead, McNeill must show that counsel's decision to admit guilt was objectively unreasonable under the *Strickland* standard. *Id.* at 192, 125 S.Ct. 551. The MAR court rejected these claims on the merits.

McNeill's contention that counsel was deficient in admitting that he committed second-degree murder is meritless. The record indicates that McNeill, after a hearing, stipulated to the commission of second-degree murder. At this hearing, McNeill indicated that he understood that the stipulation gave trial counsel the right to argue to the jury that he was guilty of second-degree murder. This argument was consistent with counsel's strategy of contending that McNeill lacked the mens rea to commit premeditated murder. Further, McNeill's testimony during trial that he "did not intend to hurt" Lipscomb cannot stand for the proposition that he did not intend to admit he committed second-degree murder, as he now maintains. In light of the evidence showing that McNeill, armed with a knife, cut Lipscomb's telephone line, forced his way into her apartment, and stabbed her to death, McNeill's statement goes to his premeditation to murder rather than a refusal to admit guilt to second-degree murder. The statement also supports trial counsel's guilt phase

strategy of arguing that McNeill had a diminished mental capacity due to his emotional state and, therefore, was incapable of committing premeditated murder. It was in this context that McNeill's statement was offered, and in this context McNeill's statement was not contrary to counsel's defense strategy of showing diminished capacity and lack of intent. Given the factual evidence presented at McNeill's trial, counsel's strategic choice to admit guilt to second-degree murder while arguing that pre-meditation was lacking was not objectively unreasonable.

■ Finally, McNeill's assertion that counsel erred in admitting he was guilty of non-felonious breaking and entering likewise fails. McNeill's stipulation and his testimony at trial admitted the facts constituting the elements of non-felonious breaking and entering, and an admission to this offense links to an admission to second-degree murder in that both show an absence of prior intent. Again, trial counsel's strategy of arguing that McNeill lacked the capacity to commit pre-meditated murder dictated an admission of non-felonious breaking and entering as well as an admission of second-degree murder. McNeill has failed to rebut the state court's factual determination that admission to non-felonious breaking and entering was part of counsel's trial strategy.

He has similarly failed to show that this strategy was objectively unreasonable. Accordingly, his claim for relief must be rejected.

## IV

Based on the foregoing, we affirm the district court's dismissal of McNeill's petition for writ of habeas corpus.

*AFFIRMED.*

KING, Circuit Judge, concurring in part and concurring in the judgment:

I fully agree with Judge Shedd's opinion with respect to the denial of McNeill's ineffective assistance of counsel claims, and I concur (for different reasons) in the denial of relief on his juror misconduct claims.[1] I part ways with my friend Judge Shedd at the point where he determines that the juror misconduct claims were procedurally defaulted. As I see it, these claims were not defaulted, because the MAR court's rejection of them—on the basis that McNeill's affidavits contained inadmissible evidence—was not premised on an adequate and independent state procedural rule. Accordingly, I find it necessary to assess the substance of the juror misconduct claims and, upon so doing, conclude, as did the MAR court, that they fail on their merits.[2] In these circumstances,

---

1. In this proceeding, McNeill has been awarded a certificate of appealability on five of his constitutional claims. One of those claims, on sentencing instructions, has been rendered moot by the Supreme Court's recent decision in *Kansas v. Marsh,* —— U.S. ——, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006). Of the remaining four claims, two involve ineffective assistance of counsel issues, and the other two involve juror misconduct issues centering, first, on Juror Lee's failure to disclose his half-sister's murder and, second, on Juror Sermarini's consultation of a dictionary to learn the definition of "mitigate." For convenience, I refer to these four claims by their

respective categories—"ineffective assistance of counsel" and "juror misconduct."

2. The MAR court (the Superior Court of Cumberland County, North Carolina) denied McNeill's juror misconduct claims by Order of March 8, 2000, on two alternative bases. First, the court denied the claims as a matter of procedural law, relying on North Carolina General Statute section 15A–1420(b)(1). *See* Order 6, 8 (J.A. 1044, 1046). Second, the court denied both claims on their merits, as a matter of substantive law. *See id.* at 7, 9 (J.A. 1045, 1047). As the court observed in so doing, "[t]he procedural and substantive grounds for denial of [the claims] are inde-

Judge Shedd and I ultimately reach the same result on the juror misconduct claims.

## I.

First, as explained below, I would rule that McNeill's juror misconduct claims were not procedurally defaulted because the State has not established that an adequate and independent procedural ground bars our review of their merits. Under the relevant doctrine, pursuit of a federal habeas corpus claim is barred when a state court has declined to address the claim because the petitioner failed to satisfy an adequate state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court has held that a "state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (internal quotation marks omitted). I will undertake to explain my position on the procedural default issue in further detail.

## A.

As a threshold matter, our Court has never been called upon to squarely address the issue of which party to a federal habeas corpus proceeding bears the burden of establishing the adequacy (or inadequacy) of a state procedural bar. In *Robinson v. Polk*, we indicated that the burden falls on the state, observing that, in the situation there presented:

> The State has not cited, and we have not found, a single North Carolina decision squarely holding that the MAR must be accompanied by admissible evidence in

pendent of each other, and each constitutes an independent and separate ground for deni-

order for the petitioner to demonstrate entitlement to an evidentiary hearing.... Because it is not clear that North Carolina rules require a MAR to be accompanied by admissible evidence ... we cannot hold that [the petitioner's] failure to submit admissible evidence demonstrates a lack of diligence before the MAR court.

438 F.3d 350, 367 (4th Cir.2006); *accord Conaway v. Polk*, 453 F.3d 567, 584 (4th Cir.2006) ("There is no authority under North Carolina law (nor has the State asserted any to us) requiring that such affidavits and documents themselves constitute *admissible* evidence."). In *McCarver v. Lee*, however, we required the petitioner to make what we called a "colorable showing" that the asserted procedural bar "is not consistently and regularly applied," by citing "a non-negligible number of cases" in which the procedural bar was not applied. 221 F.3d 583, 589 (4th Cir.2000); *accord Reid v. True*, 349 F.3d 788, 805 (4th Cir.2003) ("In order to demonstrate that [the rule] is inadequate in this particular instance, [the petitioner]'would need to cite a non-negligible number of cases in which [involuntary plea] claims could have been brought on direct review but were not, and in which the collateral review court nonetheless failed to bar the claim under [the rule].'"). At first glance, the principles underlying *Robinson* and *McCarver* are not entirely compatible, in that one rule (*Robinson*) would place the burden on the state, while the other (*McCarver*) would mandate that the petitioner make a "colorable showing" that the bar does not apply. *See McCarver*, 221 F.3d at 589; *Robinson*, 438 F.3d at 367.

Taking the view most favorable to the State in this proceeding, our court has

al of the claim." *Id.* at 9 (J.A. 1047).

almost—but not squarely—resolved the burden question. And our sister circuits that have addressed the issue disagree about where the burden should fall, with the majority deeming it to fall on the state. For example, the Tenth Circuit has determined that the state is ultimately responsible for proving the adequacy of a state procedural bar, reasoning that the bar constitutes an affirmative defense, and that the state is in the best position to establish the uniform application of a state procedural rule. *Hooks v. Ward,* 184 F.3d 1206, 1216–17 (10th Cir.1999).[3] The court in *Hooks* observed, however, that the petitioner has the "responsibility to put the adequacy of the state procedural bar at issue before the state is required to come forward with its proof." *Id.* at 1217. Under this burden-shifting framework,

> [o]nce the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner. This must be done, at a minimum, by specific allegations by the petitioner as to the inadequacy of the state procedure. The scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner.

*Id.*

The Ninth Circuit found the Tenth Circuit's reasoning in *Hooks* to be persuasive, also concluding that the ultimate burden of proving the adequacy of a state procedural bar lies with the state. *See Bennett v. Mueller,* 322 F.3d 573, 585–86 (9th Cir. 2003). In so ruling, the *Bennett* court adopted the burden-shifting framework spelled out in *Hooks,* holding that, once a

procedural bar defense is raised by the state, the petitioner's burden can be satisfied by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett,* 322 F.3d at 586. If the petitioner can satisfy this minimal burden, the state then bears the ultimate burden of proving the adequacy of the state procedural rule. *Id.*

The Fifth Circuit, on the other hand, presumes the adequacy of a state procedural rule, but it allows the presumption to be rebutted if the state procedural rule is not "strictly or regularly followed." *See Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir.1995) (internal quotation marks omitted). Under the rebuttable presumption framework, "[t]he petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal [and] has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir.1997). The Second Circuit has taken a middle ground, assuming—without deciding—that "[b]ecause the procedural bar is a defense to a habeas claim, . . . the state bears the burden of proving the adequacy of the state procedural rule." *Cotto v. Herbert,* 331 F.3d 217, 238 n. 9 (2d Cir. 2003).

In my view, the more sensible rule is the one espoused by the Ninth and Tenth Circuits, that is, that the burden of proving the adequacy of a state procedural bar ultimately falls on the state. Indeed, our

---

**3.** A state procedural bar constitutes an affirmative defense in a federal habeas corpus proceeding that the state is obliged to either raise or lose. *See Gray v. Netherland,* 518 U.S. 152, 165–66, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). And, as a settled general rule, the burden of proving an affirmative defense is on the party asserting it. *See, e.g., Stonehenge Eng'g Corp. v. Employers Ins. of Wausau,* 201 F.3d 296, 302 (4th Cir.2000); *Girard v. Gill,* 261 F.2d 695, 697 (4th Cir. 1958).

decisions in *McCarver* and *Robinson* are readily reconcilable with the burden-shifting framework, in that, although *McCarver* requires that a petitioner make a "colorable showing" of the inadequacy of a state procedural rule, *Robinson* indicates that the ultimate burden of proving that such a procedural rule is adequate falls upon the state. *See McCarver*, 221 F.3d at 589; *Robinson*, 438 F.3d at 367. In this situation, McNeill has satisfied his minimal obligation under the burden-shifting framework, making a "colorable showing" of the inadequacy of the state procedural rule. He has done so by relying on decisions that assertedly support the proposition that the state procedural rule has not been applied in the manner necessary to render it an adequate procedural ground for denying relief. Whether we ultimately agree with McNeill on the merits of his contention need not be resolved, of course, at the "colorable showing" stage. And, in my view, an ample "colorable showing" has been made by McNeill in this case.[4] I am content, however, in the context of this proceeding, to adhere to the procedure recently utilized by the Second Circuit. *See Cotto*, 331 F.3d at 238 n. 9 ("Because the procedural bar is a defense to a habeas claim, we assume without deciding that the state bears the burden of proving the adequacy of the state procedural rule.").[5]

### B.

I will thus assume, without deciding, that we would place the burden of establishing the adequacy of a state procedural rule on the state. On the basis of that assumption, I conclude that, in this proceeding, the State has failed to carry its burden of proving the adequacy of the procedural rule it seeks to apply against McNeill. Under the North Carolina statute at issue,

> [a] motion for appropriate relief made after the entry of judgment must be supported by affidavit or other documentary evidence if based upon the existence or occurrence of facts which are not ascertainable from the records and any transcript of the case or which are not within the knowledge of the judge who hears the motion.

N.C. Gen.Stat. § 15A–1420(b)(1) (the "Statute"). The State contends that, un-

---

4. A "colorable claim" has been described as one that "is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)." *Black's Law Dictionary* 196 (7th ed.2000). McNeill relied on several decisions for his allegation that North Carolina General Statute section 15A–1420(b)(1), as applied, is not an adequate state procedural bar. For example, in *Fullwood v. Lee*, the MAR court reached the merits of a juror bias claim where the petitioner presented an affidavit containing inadmissible hearsay from another juror. 290 F.3d 663, 676–80 (4th Cir.2002). In these circumstances, McNeill has made, in my view, the necessary colorable showing.

5. I disagree with Judge Shedd's contention that *Robinson v. Polk* has no bearing on McNeill's argument that the Statute as applied here is not clearly established. Al-

though *Robinson* did not involve a procedural default issue, it is instructive and relevant because it addresses the adequacy of the Statute and the issue of where the burden of proving such adequacy falls. In any event, the authority in our circuit suggests that this panel would be prudent to address the merits of McNeill's juror misconduct claims. We have consistently deemed it appropriate to address the merits of a petitioner's claim where we were uncertain whether a state procedural rule could be properly considered adequate and independent, without deciding where the burden falls. *See Burket v. Angelone*, 208 F.3d 172, 184 (4th Cir.2000) (reviewing merits of habeas corpus claims where scope of procedural bar was unclear); *Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir.2000) (same); *Royal v. Taylor*, 188 F.3d 239, 248 (4th Cir.1999) (same).

der the Statute, an MAR must be accompanied by an affidavit made by a declarant who has personal knowledge of the facts asserted. As in *Robinson* and *Conaway,* however, the State has not pointed to any North Carolina authorities explicitly establishing that the Statute so requires, and has been uniformly applied to so require. *See Robinson,* 438 F.3d at 367; *Conaway,* 453 F.3d at 584. The State instead relies on an inapposite opinion of this Court and an unrelated North Carolina procedural rule, neither of which supports its contention.

### 1.

First, the State urges us to import into our procedural default analysis an observation made in *Burket v. Angelone* that, in assessing the merits of a federal habeas corpus claim, "we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." 208 F.3d 172, 186 (4th Cir.2000). The State's reliance on this aspect of *Burket,* however, is misplaced. Before reaching the issue of whether the state habeas court properly excluded affidavits opposing dismissal of Burket's ineffective assistance claims, we first ascertained that we were not precluded from reaching their merits by the state court's ruling that Burket's claims failed because of a Virginia procedural rule. *Id.* at 184. The asserted procedural rule was unrelated to the sufficiency of the affidavits, however, and simply precluded a habeas petitioner from challenging the truth and accuracy of his own statements concerning the adequacy of his trial counsel and the voluntariness of his guilty plea. *See id.* at 183 (citing *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885, 888 (1981)).

Because we were unsure of the scope of Virginia's procedural rule, we proceeded to address the merits of Burket's ineffective assistance claims. *See id.* at 184. In assessing the merits of those claims, we emphasized the limited role of a federal habeas court in reviewing evidentiary determinations made by a state court. *See id.* at 186. Viewed in context, *Burket* does not support the State's contention that we are barred from reviewing the merits of McNeill's juror misconduct claims. *Burket's* recognition of our limited role in reviewing state court evidentiary determinations went to our review of the merits of the claims in that case, not to an analysis of the procedural bar issue. *See id.*

### 2.

Second, the State's procedural bar position relies on the North Carolina civil procedure rule (as well as the analogous federal rule) on summary judgment, which mandates that affidavits "be made on personal knowledge" and "show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A–1, R. 56(e); *see also,* Fed. R.Civ.P. 56(e). It is true, of course, that these rules explicitly require that such affidavits be made by a declarant with personal knowledge. It is far from clear, however, that the evidentiary standard applicable at the summary judgment level in civil proceedings is the standard to be applied to a motion to dismiss in a habeas corpus proceeding, or to an assessment of whether a habeas petitioner is entitled to an evidentiary hearing. *Cf. Robinson,* 438 F.3d at 367 ("[W]hether inadmissible evidence can be used *at an evidentiary hearing* is a different question from whether inadmissible evidence can support a claim for *entitlement to an evidentiary hearing.*"). I therefore fail to see how the explicit language used in the summary judgment rules—tellingly absent from the Statute here—supports the State's position on the procedural bar issue.

Moreover, as we recognized in *Conaway*, "it would create a 'classic catch-22 if an MAR defendant were obliged to submit admissible evidence to the MAR court in order to be accorded an evidentiary hearing, when the defendant is seeking the hearing because he cannot, without subpoena power or mechanisms of discovery, otherwise secure such evidence.' " 453 F.3d at 584. There is no apparent reason for us to stray from our recognition in *Conaway* that, in the absence of North Carolina law to the contrary, an MAR supported by affidavits that may arguably contain evidence deemed inadmissible does not fail on procedural grounds. *See id.* at 583–84.[6]

## C.

Of course, as Judge Shedd notes, our Court has previously concluded that the Statute, to the extent it requires the filing of supporting affidavits with an MAR, constitutes an adequate and independent state procedural bar. *See Richmond v. Polk*, 375 F.3d 309, 323–24 (4th Cir.2004). Our previous determination that this aspect of the Statute is an adequate and independent state procedural rule does not, however, end our inquiry. *See Reid*, 349 F.3d at 805 ("[T]he fact that a state procedural rule is adequate in general does not answer the question of whether the rule is adequate as applied in a particular case."). Importantly, our decision in *Richmond* was limited to deciding that the Statute was unambiguous in requiring that supporting affidavits be submitted with an MAR. *See* 375 F.3d at 323–24. The relevant facts here are readily distinguishable from those underlying our decision in *Richmond*. There, the petitioner presented no affidavits whatsoever supporting two of his ineffective assistance claims, and he submitted only a single affidavit with his third ineffective assistance claim, which failed to support that claim. *Id.* at 322. By contrast, McNeill complied with the statutory mandate, presenting and filing affidavits in support of both of his juror misconduct claims. The MAR court's denial of McNeill's claims on the ground that the affidavits contained evidence that it deemed inadmissible is a materially different ruling than the *Richmond* MAR court's denial of relief on the ground that *no* supporting affidavits had been submitted. *Richmond* thus does not require us to accept the State's contention that the Statute places a heightened evidentiary burden on a habeas corpus petitioner, or that the Statute has been uniformly applied in such a manner.

In my view, the State has failed to establish that the submission of admissible evidence in support of an MAR is required by the Statute, or that this asserted proce-

---

**6.** In my view, contrary to that of Judge Shedd, our opinion in *Barnes v. Thompson* does not preclude us from reaching the merits of McNeill's juror misconduct claims. *See* 58 F.3d 971 (4th Cir.1995). In *Barnes*, we observed that a federal habeas court "does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." *Id.* at 974 n. 2. This simple observation does not undermine the principle that, if we are uncertain of the scope of a state procedural rule, and unsure if it could be considered an "adequate and independent" ground, assessing the merits of a prisoner's claim is appropriate.

*See Burket*, 208 F.3d at 184. In other words, we need not blindly accept the MAR court's decision that McNeill failed to comply with the state procedural rule at issue, but instead must determine whether the procedural bar was an adequate and independent one. *See id.; see also Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir.2000) ("[W]e must ... assure ourselves that the rule applied is a firmly established and regularly followed state practice." (internal quotation marks omitted)); *Royal v. Taylor*, 188 F.3d 239, 248 (4th Cir.1999) (reviewing merits of habeas corpus claims where scope of procedural bar was unclear).

dural rule constitutes a "firmly established and regularly followed state practice." *Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir. 2000) (internal quotation marks omitted). Absent the establishment of such a state procedural rule, McNeill's juror misconduct claims are not procedurally barred, and we are obligated to address their merits.

## II.

Upon assessing the substance of McNeill's juror misconduct claims as to Jurors Lee and Sermarini, I am satisfied that the MAR court's denial of these claims on their merits was not an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). First, McNeill is unable to establish that Juror Lee failed to honestly answer a material question, or that, even if the facts of his half-sister's murder had been disclosed, Lee would have been subject to challenge for cause. Second, McNeill is unable to show any prejudice resulting from Juror Sermarini's use of the dictionary definition of "mitigate." I will explain my position on the juror misconduct claims in further detail.

## A.

McNeill contends that Juror Lee's failure to disclose during voir dire that his half-sister had been murdered by her boyfriend forty-seven years earlier, when Lee was nine years old, unconstitutionally infected McNeill's trial jury, entitling him to

federal habeas corpus relief. To be sure, the Supreme Court has long recognized that the Sixth Amendment precludes a biased juror from serving on a criminal jury. *United States v. Wood*, 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936).[7] In order to secure habeas corpus relief on this claim, however, McNeill is obliged to show that Juror Lee "failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).[8] McNeill's claim on Juror Lee fails to satisfy the *McDonough* test, however, because he has not made the essential showings; that is, he cannot establish that Lee failed to honestly answer a material voir dire question, and he is unable to show that a complete response by Lee would have provided a valid basis for a challenge for cause.

### 1.

First of all, McNeill is unable to make the essential showing that Juror Lee failed to honestly answer a material voir dire inquiry. The law student affidavits and Juror Lee's own affidavit do not establish that Lee failed to honestly answer a material voir dire question. Rather, they show only that Juror Lee inadvertently failed to provide *any* answer to an inquiry on whether a family member or close friend had been a crime victim. And Juror Lee's failure to answer this question does not give rise to a presumption or inference

---

**7.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial [] by an impartial jury." U.S. Const. amend. VI.

**8.** A petitioner who can satisfy the first two prongs of the *McDonough* test is then also obliged to establish that "the juror's 'motives for concealing information' or the 'reasons

that affect [the] juror's impartiality can truly be said to affect the fairness of [the] trial.'" *Conaway v. Polk*, 453 F.3d 567, 588 (4th Cir. 2006) (quoting *McDonough*, 464 U.S. at 556, 104 S.Ct. 845). Because McNeill fails to satisfy the first two prongs of *McDonough*, I need not reach the third prong.

that he responded dishonestly. As we have recognized, *"McDonough* provides for relief only where a juror gives a dishonest response to a question actually posed, not where a juror innocently fails to disclose information that might have been elicited by questions counsel did not ask." *Billings v. Polk,* 441 F.3d 238, 245 (4th Cir. 2006) (citing *McDonough,* 464 U.S. at 555, 104 S.Ct. 845). Importantly, a cursory review of the juror questionnaire reveals Lee's failure to check either "yes" or "no" on the pertinent question, and McNeill's defense lawyers were entitled to voir dire Juror Lee about his omission.[9] As we have explained, "the right to challenge a juror is waived by failure to object at the time the jury is empaneled if the basis for the objection might have been discovered during *voir dire." Richmond v. Madison Mgmt. Group, Inc.* 918 F.2d 438, 459 (4th Cir.1990) (internal quotation marks omitted). The record establishes that Juror Lee gave no "dishonest response" on voir dire and, at most, "innocently fail[ed] to disclose information" that the lawyers could readily have elicited on voir dire. McNeill is therefore unable to satisfy the first prong of *McDonough.*

### 2.

McNeill's claim on Juror Lee also fails on *McDonough's* second prong, in that he has failed to establish that an honest answer by Juror Lee would have provided him with a valid basis to challenge Lee for cause. Indeed, the fact that a juror or his close relative has been a crime victim is "only minimally relevant to the question of that juror's impartiality." *United States v. Jones,* 608 F.2d 1004, 1007 (4th Cir.1979). Although exclusion for cause "is more compelling when a juror is closely associated

with a victim of the same type of offense as that being tried," there is no *per se* rule of disqualification when a potential juror is merely related to a victim of a similar crime. *Id.* at 1008. Thus, the fact that Juror Lee's half-sister had been murdered by her boyfriend when Lee was nine years old, forty-seven years before McNeill's trial, does not, in and of itself, establish that Lee was a biased potential juror at McNeill's trial. Importantly, the relationship between Juror Lee and his half-sister was, according to Lee's affidavit, a substantially attenuated one: Lee's half-sister had a different mother; she was seldom around when he was a child; and her death had little effect on him. Juror Lee also maintains that he knew very little about his half-sister's death and that it had no influence on his service as a juror in McNeill's trial. In these circumstances, the murder of Juror Lee's half-sister nearly a half century earlier, even if it had been disclosed on voir dire, would not have provided McNeill with a valid basis to challenge Lee for cause.

McNeill is thus unable to establish either of the first two prongs of *McDonough.* It was therefore not unreasonable for the MAR court to conclude that the facts shown by affidavit are legally insufficient, under *McDonough* principles, to show that McNeill's Sixth Amendment right to an impartial jury has been infringed. Thus, McNeill's juror misconduct claim as to Juror Lee fails on its merits.

### B.

McNeill's second juror misconduct claim is that Juror Sermarini intentionally consulted a dictionary at his home during an overnight recess in the sentencing deliberations, seeking to ascertain the meaning of

---

9. I do not criticize McNeill's defense lawyers for their actions in regard to Juror Lee. They may have possessed sound reasons for not making a follow-up inquiry on Juror Lee's questionnaire responses.

the term "mitigate," to assist his decision as a juror and to influence other jurors. Generally, of course, once a verdict has been rendered, jurors are not entitled to impeach it. *See Tanner v. United States,* 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). This general prohibition is limited by the Sixth Amendment, however, which guarantees an accused the right to confront the witnesses against him. *Robinson v. Polk,* 438 F.3d 350, 359 (4th Cir.2006). Pursuant to *Tanner,* the Sixth Amendment does not mandate judicial consideration of juror misconduct allegations regarding influences *internal* to the deliberations process. *See Robinson,* 438 F.3d at 363. On the other hand, "[u]nder clearly established Supreme Court case law, an influence is not an internal one if it ... is extraneous prejudicial information; i.e., information that was not admitted into evidence but nevertheless bears on a fact at issue in the case...." *Id.*

Juror Sermarini's use of his home dictionary, in this setting, constituted an external, rather than an internal, influence. *See United States v. Duncan,* 598 F.2d 839, 866 (4th Cir.1979). As we recognized in *Duncan,* however, a juror's reference to a dictionary will constitute juror misconduct, but it is not deemed prejudicial *per se. See id.* Other courts have agreed that a juror's use of a dictionary is not an event that is inherently prejudicial. *See, e.g., United States v. Henley,* 238 F.3d 1111, 1115–16 (9th Cir.2001) (observing that certain juror misconduct, including use of dictionary definition, constitutes "more common and less pernicious extraneous influence on jury deliberations" than other more serious misconduct, such as attempted bribery). And it is generally accepted that, although a juror can testify that she consulted an extraneous influence and related her findings to the panel, neither she nor any other juror can testify about any effect the extraneous influence may have had on the verdict or on the jury deliberations. *See* Fed.R.Evid. 606(b); *Mayhue v. St. Francis Hosp., Inc.,* 969 F.2d 919, 921 (10th Cir.1992). Thus, McNeill is obliged to establish that he was actually prejudiced, and he must do so without resort to an inquiry into the effect, if any, that Juror Sermarini's dictionary definition may have had on the jury's deliberations.

Importantly, there is no Supreme Court authority clearly articulating the specific circumstances under which an extraneous influence might prejudice a juror, and "each case must turn on its special facts." *See Marshall v. United States,* 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). In this regard, certain of our sister circuits have sought to articulate relevant factors for an assessment of when a jury's use of a dictionary might be prejudicial. For example, the Tenth Circuit has determined that, in considering the possible prejudicial impact of a juror's reference to a dictionary, a reviewing court should weigh the following:

> (1) The importance of the word or phrase being defined to the resolution of the case. (2) The extent to which the dictionary definition differed from the jury instructions or from the proper legal definition. (3) The extent to which the jury discussed and emphasized the definition. (4) The strength of the evidence and whether the jury had difficulty reaching a verdict prior to introduction of the dictionary definition. (5) Any other factors that relate to a determination of prejudice.

*Mayhue,* 969 F.2d at 924.

In these circumstances, McNeill is unable to show that he was prejudiced by Juror Sermarini's misconduct. The term "mitigate" was important to the resolution

of McNeill's sentencing trial, of course, because it was relevant to the question of whether he should receive the death penalty. And the jury discussed the definition at some length, according to Juror Sermarini's written and signed statement. His dictionary definition of "mitigate," however, did not materially differ from the court's instruction on the point. The definition of "mitigate" that Juror Sermarini obtained and shared with his fellow jurors was, according to a law student's affidavit, "to cause to become less harsh or hostile." J.A. 1085–86. The jury had already been instructed by the trial court that

> [a] mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first degree murders.

J.A. 900. A comparison of these two definitions makes it readily apparent that nothing in the dictionary definition proffered by Juror Sermarini is incompatible with the court's instruction on mitigation. And, the jury in fact found eight mitigating factors in favor of McNeill (of the twenty-one presented for its consideration), suggesting that it grasped the meaning of "mitigate" provided by the court, and that its understanding of mitigation was not undermined by any external influence. Because McNeill is unable to establish any prejudice from Juror Sermarini's improper conduct, we are unable

to say that the MAR court's decision on the merits of this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." U.S.C. § 2254(d)(1).

### III.

Pursuant to the foregoing, I would rule that McNeill's juror misconduct claims are not procedurally barred, and I disagree with Judge Shedd on this point. That being said, I would deny both juror misconduct claims on their merits. I thus join in the judgment denying relief on the juror misconduct claims and in Judge Shedd's resolution of McNeill's ineffective assistance claims, as spelled out in Part III.B of his opinion.

GREGORY, Circuit Judge, dissenting in part and concurring in part:

Although I concur with the Court's denial of relief on three of McNeill's claims, I respectfully dissent from the judgment denying an evidentiary hearing for one of McNeill's juror misconduct claims.[1] In my opinion, McNeill has made a viable claim that his right to a fair trial may have been impaired by the introduction of an improper external influence into jury deliberations. We should grant McNeill an evidentiary hearing so that the district court may consider the extent of the prejudice caused by Juror Sermarini's introducing into deliberations a dictionary definition that undermined the legal concept of mitigation.

---

1. McNeill received certificates of appealability for two ineffective assistance of counsel claims and two juror misconduct claims. One ineffective assistance claim concerned counsel's concession of guilt to lesser-included offenses; the other concerned counsel's mitigation case. I agree with the Court's

rejection of both claims. One juror misconduct claim concerned Juror Lee's failure to reveal that his half-sister had been murdered by a jealous lover; the other concerned Juror Sermarini's use of a dictionary to define *mitigate* for the other jurors. I disagree with Judges Shedd and King on the latter claim.

## I.

Late on November 17, 1992, John Davis McNeill knocked on the door of a Fayetteville, North Carolina, apartment. Melissa Jones, the neighbor of McNeill's on-and-off-again girlfriend, Donna Lipscomb, answered. McNeill asked Jones for the spare key to Lipscomb's apartment. Jones, knowing that McNeill and Lipscomb were dating and having seen McNeill in the apartment several times, retrieved the key for him. After she had given him the key, Jones noticed that he had a knife. She retreated into her apartment to call the police, but her phone was not working.

McNeill then went to Lipscomb's apartment, unlocked the door, and pushed it open, despite Lipscomb's efforts to keep it closed. Her two sons, Nate, 13, and John, 11, saw that McNeill had a knife. While McNeill and Lipscomb argued, Nate attempted to call the police, but the Lipscomb phone also was not working. The argument escalated, and McNeill stabbed Lipscomb in the chest, back, arms, abdomen, and breast, producing twelve wounds. Nate managed to stop McNeill. McNeill then ran outside to call the police.

When the police arrived, they found McNeill covered in blood and apparently intoxicated. He directed them to Lipscomb's apartment and admitted that he had stabbed her. He told police that he "didn't mean to do it," but she had been "dissing him."

At trial, McNeill testified that he had gone to Lipscomb's apartment to try to resolve some issues in their relationship. He explained that he had taken the knife with him because he expected to find a man in the apartment, and he wanted to be prepared to scare him away. He admitted to pulling the telephone wires out of the junction box behind the apartments because he needed to make sure that nothing interrupted their conversation. McNeill reiterated in his testimony that he never intended to kill Lipscomb.

## II.

The fact that the jury may have substituted a dictionary definition of *mitigate* for the legally understood meaning of the term compels me to disagree with Judges Shedd and King in their dismissal of McNeill's second juror misconduct claim. Because it is of the utmost importance in a death case that a jury understand the legal definition of *mitigate*, I would grant an evidentiary hearing so that McNeill could explore the prejudice caused by Juror Sermarini's introduction of a dictionary definition of *mitigate* during deliberations.[2]

### A.

The consideration of mitigation evidence in a capital sentencing is unique in criminal procedure. In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court emphasized that the importance of mitigation in a capital sentencing proceeding arises from the vastly different and permanent nature of a death sentence and the need to consider each capital defendant in a particularly individualized way: "The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases." 438 U.S. at 605, 98 S.Ct. 2954. The Court held that a jury should be able to consider all evidence that would allow a single juror to find any reason to spare the defendant's life: "The

---

**2.** Because Judge King has so thoroughly and expertly discussed the reasons that the procedural bar should not apply to this claim, I will only consider the claim on its merits in this dissent.

Eighth and Four-teenth Amendments require that the sentencer ... not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character that the defendant proffers as a basis for a sentence less than death." *Id.* (emphasis in original).

### B.

Judge King has effectively spelled out the reasons why Juror Sermarini's consultation of a dictionary constituted the introduction of an improper external influence and resulted in juror misconduct, but his unwillingness to see the prejudice resulting from this act compels me to disagree with his concurrence. We stated in *United States v. Duncan,* 598 F.2d 839, 866 (4th Cir.1979), that a juror's consultation of a dictionary constitutes juror misconduct. When that consultation involves the legally defined concept that is the crux of the sentencing process, we should investigate its potential for prejudice as thoroughly as possible.

Because of the importance of the concept of mitigation in the capital sentencing context, we cannot pass lightly over the jury's misconduct in this case. A capital jury is required to consider mitigation evidence not only as it affects their evaluation of the crime of which they have found the defendant guilty, but also as it affects the defendant himself. *Lockett* instructs us that the jury must consider each defendant as an individual. 438 U.S. at 605, 98 S.Ct. 2954. Because a jury must decide whether to sentence that individual defendant to death, we require counsel to present mitigation evidence independent of the crime, and we hold counsel ineffective who fail to investigate and present this type of evidence. *See Rompilla v. Beard,* 545 U.S. 374, 385, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Juror Sermarini's introduction of a non-legal definition of *mitigate* likely prevented the jury from properly weighing mitigating factors that reached beyond the crime and likely prevented McNeill from having a fair sentencing.

### C.

Judge King looks to the Tenth Circuit for guidance on how we should approach the potential prejudice caused by Juror Sermarini's substitution of a dictionary definition of *mitigate* for the legal definition provided by the court. As Judge King noted, a reviewing court should consider:

(1) The importance of the word or phrase being defined to the resolution of the case. (2) The extent to which the dictionary definition differed from the jury instructions or from the proper legal definition. (3) The extent to which the jury discussed and emphasized the definition. (4) The strength of the evidence and whether the jury had difficulty reaching a verdict prior to introduction of the dictionary definition. (5) Any other factors that relate to a determination of prejudice.

*Mayhue v. St. Francis Hosp., Inc.,* 969 F.2d 919, 924 (10th Cir.1992).

All of these factors illustrate the reasons why we should grant McNeill an evidentiary hearing so that he can further develop his juror misconduct claim. Factor one leans most heavily in McNeill's favor because *mitigate,* as discussed above, may be the most important word in the jury's determination of whether to sentence a defendant to death. Factors three and four would best be explored in an evidentiary hearing to discover precisely what happened when Juror Sermarini introduced the dictionary definition.

Judge King would rule that the jury's misconduct did not prejudice McNeill because, under factor two, the dictionary definition of mitigate did not differ substantially from the definition the judge provided to the jury. The definition of *mitigate* that Juror Sermarini introduced was, "to cause to become less harsh or hostile." J.A. 1085–86. Judge King compares that definition with one of the mitigation instructions given to the jury:

A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first degree murders.

J.A. 900. Judge King states that "nothing in the dictionary definition proffered by Juror Sermarini is incompatible with the court's instruction on mitigation" and concludes, therefore, that McNeill has not shown prejudice resulting from Sermarini's misconduct.

Admittedly, the dictionary definition and the jury instruction are similar, but Judge King neglects to consider the remaining jury instructions that should have indicated to the jury that they were to consider mitigation not only in the context of the crime but also in regards to McNeill himself. After giving the above-cited definition of mitigation, the trial court went on to detail twenty-one specific mitigating factors, sixteen of which did not relate directly to the commission or circumstances of the crime. That the jury found eight of these mitigating factors but determined that they did not outweigh the one aggravating factor that McNeill committed the murder while engaged in the commission of a burglary suggests that the jurors indeed focused on mitigation of the crime itself and not on mitigation as defined by law in the context of a capital sentencing hearing.

A jury that understood mitigation as only causing "to make less harsh or hostile" might improperly focus only on the harshness or hostility of the crime itself. This singular focus would undermine the jury's duty to consider the characteristics of the defendant that might make him less worthy of a death sentence. For this reason, I would grant McNeill an evidentiary hearing to explore the prejudice caused by this juror's misconduct.

### D.

Judge King argues that McNeill should not be entitled to an evidentiary hearing on this claim because courts are generally barred from peering into the minds of jurors with respect to their deliberative processes. He cites Federal Rule of Evidence 606(b) in support of the proposition that no juror "can testify about any effect the extraneous influence may have had on the verdict or the jury deliberations." He states that McNeill must prove prejudice resulting from juror misconduct "without result to an inquiry into the effect [external influence] may have had on the jury's deliberations."

Judge King's interpretation of this rule effectively hamstrings any defendant who could make a viable claim of juror misconduct, no matter how egregious, but who cannot prove prejudice resulting from that misconduct without the evidence that he might develop in a hearing. If we were to grant McNeill an evidentiary hearing on this claim, we would not be requiring jurors to reveal the secrets of their deliberative processes. Instead, McNeill could develop evidence, beyond the two student affidavits and Sermarini's own attested statement, that Juror Sermarini did bring

in a dictionary definition of mitigate, that other jurors consulted or discussed that definition, and that the jury concluded its deliberations shortly after the introduction of the non-legal definition. McNeill could thus prove prejudice without violating the federal rule and the principle that a juror's deliberative process is inviolable. I believe that we should give him the opportunity.

### III.

For the foregoing reasons, I respectfully dissent from the judgment denying McNeill an evidentiary hearing. Because of the importance of mitigation in the capital sentencing context, I would grant McNeill an evidentiary hearing so that he may develop evidence of juror misconduct and the prejudice caused by that misconduct.